ROE E. WELLS, individually and ROE E. WELLS, as Co-executor of the Estate of Emily F. Gilchrist Wells, deceased, v. OLGA MENN, individually and as administratrix of the estate of Paul L. Menn, deceased.

17 So. (2nd) 217 January Term, 1944
February 4, 1944 En Banc
Rehearing Denied April 6, 1944

174

*Redfearn & Ferrell,* for Roe E. Wells, individually, *H. H. Taylor,* for Roe E. Wells,.as co-executor, appellants.

*Evans, Mershon & Sawyer,* for Olga Menn, individually, and *Evans, Mershon & Sawyer* and *Shepard Broad* as attorneys for Olga Menn, as administratrix of the Estate of Paul Menn, deceased and *Wilson Trammell,* as attorney for John M. Ogden, co-executor of the will of Emily F. Gilchrist Wells, and *James Kytle Williams, Chadbourne Hunt, Jaeckel & Brown* (New York) of counsel for appellee.

TERRELL, J.:

Emily F. Gilchrist Wells, a resident of Dade County, died in a hospital in New York September 5, 1941. Four days later, her will, executed in Dade County, was filed for probate in the county judge's court of said county. This will left her husband, Roe Wells, ten dollars; it gave Paul and Olga Menn, her niece and nephew, each forty per cent of her estate and it gave Elsie King Wilcox another niece, twenty per cent of her estate.

On the same date (September 9, 1941), Roe Wells filed in the County Judge's Court of Dade County a photostatic copy of an alleged lost will with his petition to reestablish and probate the same as the last will of his wife, Emily F. Gilchrist Wells. This will was executed by Mrs. Wells thirteen days before her death while she was on her deathbed in the hospital in New York. It named Roe Wells and John M. Ogden as executors of her estate; it gave Roe Wells seventy per cent of her estate, and his twenty year old son who was not her child, ten per cent of her estate, and it gave Olga and Paul Menn each ten per cent of her estate.

In November, 1941, Paul and Olga Menn filed their answer to the petition of Roe Wells to probate the alleged lost will wherein they challenged its bona fides and demanded strict proof thereof. A hearing was conducted in New York at which much testimony was taken on the issues made by the petition and the answer. The hearing was adjourned to a date and place to be agreed on and was followed by numerous conferences and much negotiation.

On January 6, 1942, Wells and the Menns entered into a "settlement agreement" whereby the Menns should receive specified assets of the estate free of all debts, claims, taxes, and administration expenses in full settlement of their claim against the estate. They also agreed to permit the lost will to be probated, Wells to qualify as co-executor, and that the "settlement agreement" be confirmed and effectuated by order of a court of competent jurisdiction.

Prior to the latter proceedings, Roe Wells by counsel settled the claim of Elsie King Wilcox against the estate; Paul Menn died March 22, 1942, and his sister Olga Menn was appointed exeuctor of his estate and Rena Rose Goodman filed a caveat against the probate of the lost will which was also finally disposed of and is not material to this case. Other proceedings were had which we do not deem essential to burden this opinion with.

May 12, 1942, pursuant to notice served on all parties, hearing was held by the probate court on petition to confirm the "settlement agreement." Roe Wells and counsel representing all interested parties attended this hearing but Roe

Wells was not represented by counsel. The hearing was adjourned to give Wells time to employ counsel to represent him. As co-executor, he employed counsel who filed objections to confirmation of the settlement agreement. Wells did not resist the confirmation individually. In November, 1942, the probate court entered its order confirming the settlement. He further found that Wells was present in person at the hearing upon the petition and admitted the execution of the agreement, that individually he had not resisted confirmation, that Wells and Ogden as co-executors had been present at the hearing and that the objections of Wells as co-executor had been considered. In his order of confirmation, the court reserved jurisdiction of the petition for the purpose of making other orders appropriate to the disposition of the estate and the rights of the parties interested.

On December 4, 1942, Wells as co-executor moved to vacate the order of confirmation and on the same date, he employed different counsel to represent him individually and they moved to vacate the order of confirmation. Both motions were after argument overruled and appeals taken to the circuit court. A special division of the circuit court of Dade County affirmed each order of the probate court. Wells individually and as co-executor appeals from this order but limits his appeal to that part of the order confirming the settlement agreement as between himself and Olga Menn and her deceased brother.

Had the probate court jurisdiction to entertain, confirm, and effectuate the settlement agreement is the first question presented for our consideration.

Section Seventeen of Article V of the Constitution of Florida defines the jurisdiction of the county judge. In so far as applicable to this case, it is as follows:

". . . The County Judge shall have jurisdiction of the settlement of the estates of decedents and minors, to order the sale of real estate of decedents and minors, to take probate of wills, to grant letters testamentary and of administration and guardianship, and to discharge the duties usually pertaining to courts of probate. . . ."

Section 38, 40 and 77 of Chapter 16103, Acts of 1933, the

same being Sections 732.01, 732.03, and 732.41, Florida Statutes of 1941, amplify or expand the foregoing provisions of the Constitution but add nothing to it. The makers of the Constitution did not in terms attempt a detailed specification of the acts contemplated in the jurisdiction of the county judge but defined that jurisdiction in very broad general terms. Anything reasonably pertaining to the settlement or administration of the estates of decedents and minors is contemplated within the jurisdiction of the probate judge. It requires no stretch of the imagination or terms of the Constitution to hold that the settlement agreement in this case was within that category and could be adjudicated as effectively by the probate court as it could probate the will.

On the question of the probate court's jurisdiction of the person of Wells, it is significant that such jurisdiction is not questioned individually but as co-executor of Mrs. Wells' estate. The record shows that he (Wells) was present and participated in the proceedings leading to the probate court's confirmation, he obtained a continuance for the purpose of employing counsel; he waived service of citation and copy of the petition upon him by entering a voluntary general appearance and in other ways recognized the jurisdiction of the probate court over him personally in the proceedings for confirmation of the settlement agreement.

We think therefore that there is no merit to this contention, that the settlement agreement is in all respects valid and enforcible, that the probate court had jurisdiction to entertain and confirm it, that his order of confirmation was regular and that the affirmative order of the circuit court was valid. It would be an unusual commentary on the means provided for the administration of justice to permit a litigant to act as Wells did in this case and do the things he did and then say that the court was without jurisdiction of him or the subject matter in litigation. It would attach a dignity to technical procedure that would draw a law suit to finality with the speed of Rip Van Winkle's siesta.

The second question is whether or not Wells, as co-executor is entitled to appeal from the order confirming the compromise agreement when said order was without preju-

dice to the rights of creditors, beneficiaries, and all others interested in the assets of the estate.

We are convinced that Wells as co-executor of the estate was without standing to urge this objection and by the wording of the order overruling the objections he was without standing to insist that he be permitted to answer the petition. He individually entered into the settlement agreement; he was present and so admitted to the court and then personally failed to object to the agreement or the confirmation of it. His objections as co-executor are highly technical and he challenges nothing on the merits.

A third question asserts that Wells is estopped to question the validity of the settlement agreement.

This question must be answered in the affirmative because of what has heretofore been said and because the record shows that the order probating the lost will permitted other legatees to file a petition to revoke the probate. The order confirming the settlement agreement was entered two days before the expiration of the period in which other legatees might file petition to revoke the probate and Wells did not question the jurisdiction of the probate court or the validity of the settlement agreement until twenty days after entry of the order of confirmation and eighteen days after expiration of the right of other parties to petition for revocation of the probate.

Affirmed.

BUFORD, C. J., BROWN, CHAPMAN, THOMAS, ADAMS and SEBRING, JJ., concur.