SHANNON, Judge.
This is an appeal by two of the heirs and legatees under the will of their father, Joseph Feldman, deceased, against the widow and the executor of said estate.
The points involved are five in number and raise in substance the following questions :
1. Whether the order of the county judge entered October 5, 1956, dealing with the agreement between the parties rendered the question res judicata, and whether the court’s subsequent order dated July 23, 1957, materially changing the terms of the first order is therefore null and void ;
2. Whether the court’s order of July 23, 1957, in attempting to grant specific performance of the alleged agreement, violates the exclusive jurisdiction over controversies involving the title of real estate vested in circuit courts by the Constitution of the State of Florida;
3. Whether the court erred in attempting to exercise jurisdiction over,, and to compel a conveyance of, homestead property;
4. Whether the alleged agreement of February 14, 1956, is too vague, indefinite and uncertain to meet the legal requirements of the remedy of specific performance ; and
5. Whether the court erred, in the supplemental order of September 6, 1957, in denying and holding in abeyance payment of judgments against the estate held by the appellants.
We have set forth the points of law raised by appellants, but in deciding this case, we think that we can obviate several of the various questions of law advanced.
Joseph Feldman, deceased, left a will which, after making quite a few specific bequests, substantially follows the laws of descent in the State of Florida.
The appellee-widow elected to take dower before there was any agreement between her and the appellants. Thereafter she entered into an agreement with the appellants for the purpose of settling the estate. It was agreed in part as follows:
“1. The party of the first part is to receive her dower rights in and to all of the assets of the estate including all mortgages, loans, accounts receivable, cash in the bank or banks, cash in the vault in the name of Balfoura Gordon, and vaults maintained in the name of the deceased, Joseph Feldman, collections, and stocks and bonds, all in accordance with the schedules now filed with the Probate Court of Palm Beach County, Florida, U. S. A., * *
The agreement then provides for the widow to receive certain specific assets of the estate, but unfortunately, the agreement is silent as to whether these would be part of her dower or in addition to her dower. There are also some ambiguities in particular paragraphs of the agreement; for instance, the second and third paragraphs read as follows:
“2. It is further agreed between the parties that the Hewson Mortgage in the sum of Five Thousand ($5,000.00) Dollars is to be turned over to be the sole property of the party of the first part.
“3. The party of the first part is to receive for her sole and exclusive use the homestead at 160 Seabreeze Avenue, in the City of Palm Beach, Florida, U. S. A., together with the contents therein, excepting for the ring, the painting by Max Band, and the painting by Smith, the sterling silver bearing the engraved initial ‘F’, the books, Persian rugs and objects of art which shall all be distributed in accordance with the terms of the original Will.” (emphasis added)
*409 The fourth paragraph is also somewhat uncertain as to the title which the widow is to receive in a certain lot. The fourth paragraph reads as follows:
“4. The party of the first part is to receive for her sole and exclusive use and ownership the lot in Stotesbury Park, Palm Beach, Florida.” (emphasis added)
After she had signed this agreement she filed her selection of dower, and in this pleading eliminated certain items included in the agreement for the purpose of computing dower, contemplating that these items would be given to her absolutely under the said agreement. The court below entered an order regarding assignment of dower October 5, 1956, which reads in part:
“The court finds that there is uncertainty, lack of agreement and dispute between the parties as to the meaning of the agreement of February 14, 1956; that the same is not binding upon the executor. The court finds, therefore, that the assignment of dower to the widow must be made under and pursuant to the statute and the rights of all the parties in interest must be determined according to the will and to law, any provision of said agreement of February 14, 1956, to the contrary notwithstanding.
“It Is Ordered, Adjudged and Decreed :
“1. The assignment of dower to the widow shall be made under and pursuant to the statute and the rights of all the parties in interest shall be determined according to the will and to law, any provision of said agreement of February 14, 1956, to the contrary notwithstanding.”
Thereafter, on January 30, 1957, the lower court entered judgment in dower based on an assignment out of the entire assets of the estate, excluding the homestead, and including all other items which were covered by the agreement between the parties, pursuant to the order of October 5, 1956, quoted above.
Immediately after the entry of the judgment in dower the widow submitted a pleading styled “Answer of Sadie Feldman to executor’s petition for distribution,” in which she alleged that the agreement was for final distribution after determination of her dower, and prayed for distribution in accordance with the terms of the agreement. The judge, still on the same day, entered an order staying those portions of the judgment in dower in conflict with the agreement, pending a consideration of the widow’s request. Appellants moved to rescind this stay order, and this motion, together with others pending, and the widow’s “answer to executor’s petition” were called up for hearing by the executor on July 2, 1957. This hearing culminated in the order appealed from, which found the “agreement, duly executed, providing for a settlement between the said parties after the determination of the widow’s dower,” and therefore ordered that :
“* * * the Motion of E. J. Field-man and Balfoura Gordon to rescind Stay Order heretofore entered by this Court, be and the same is hereby denied; it is further
“Ordered that Max Ganz, Executor herein, convey Lot 10, Stotesbury Park, a subdivision in the Town of Palm Beach, Florida, to the widow, Sadie Feldman, in accordance with the terms of the aforesaid agreement between the parties, dated February 14, 1956, and to pay the sum of $10,000.00 to Gloria Feldman, as provided in Paragraph VII on page 3 of said Agreement.
“It Is Further Ordered that Sadie Feldman, Balfoura Gordon and E. J. Fieldman execute such documents as might be necessary to carry out the terms of said agreement within a reasonable length of time, not to exceed thirty days from the date of this Or *410 der, and that Max Ganz, the Executor, is hereby directed to withhold any further distribution to any of said parties until the execution and delivery to Max Ganz, the Executor herein, all of such documents as might be necessary to carry out the terms of said agreement.”
As has been previously noted, the agreement is subject to several possible interpretations, and the County Judge found in his order of October 5, 1956, that there was uncertainty and dispute between the parties in regard to it. No evidence has been taken in this case and we have only the will, the agreement, and the several pleadings and orders of the court below to guide us. A well-known exception to the parol evidence rule comes into play when a written contract is ambiguous. 13 Fla.Jur., Evidence, Section 397. We have held that in such situations, involving ambiguous instruments, all evidence which would tend to develop the intention of the parties to the instrument should be before the court, rather than summarily disposing of the question on the pleadings. Pancoast v. Pancoast, Fla.App.1957, 97 So.2d 875, involved the construction of an ambiguous will by summary decree, but the principle is the same. We must therefore remand this case for the taking of testimony to determine the parties’ intent in executing the controversial agreement, which intent should be the starting point for the lower court in the distribution of this estate. It will be noted that disregarding the agreement for the purpose of assigning dower, as was previously done by the lower court, gave the widow one-third of the value of the items in the agreement, and then when the court ordered the enforcement of the agreement the total effect was to give the widow a larger percentage of these items. This result seems highly unlikely to be consonant with the parties’ intention, particularly in view of the admission in the widow’s own pleading that certain of these items should be eliminated in the computation of dower.
The lower court should also receive evidence relating to the specific ambiguities previously pointed out, and if a genuine dispute is still found to exist regarding the homestead property as effected by paragraph 3 of the agreement, and/or the real property covered by paragraph 4, these questions must be resolved by the circuit court.
In thus holding that the county judge is without jurisdiction to construe and effectuate a disputed settlement agreement insofar as it pertains to real property we are aware of the prevalent uncertainty as to the extent of a county judge’s jurisdiction in such cases, and of how close the question is in the instant case under the present state of the law in Florida. There are two broad propositions of law which become antithetical when concurrently applicable to the same factual situation, and which one will control to the exclusion of the other is the question to be answered in each of these situations. One of these propositions can be stated as giving county judges’ jurisdiction to do all things reasonably related to the probate of wills and the settlement or administration of decedent’s estate. Wells v. Menn, 1944, 154 Fla. 173, 17 So.2d 217; In re Monks’ Estate, 1944, 155 Fla. 240, 19 So.2d 796; Blanton v. State, 1947, 158 Fla. 667, 29 So.2d 865; In re Noble’s Estate, Fla.1954, 73 So.2d 873; In re Baxter’s Estate, Fla. 1956, 91 So.2d 316. The conflicting proposition exists by virtue of the express constitutional provision that “circuit courts shall have exclusive original jurisdiction * * * in all actions involving the titles or boundaries of real estate, * * Florida Constitution, Art. V, Section 6(3), F.S.A.
Some cases involving county judges’ jurisdiction in which this constitutional provision has directly or indirectly controlled are: Mott v. First National Bank of St. Petersburg, 1929, 98 Fla. 444, 124 So. 36; Spitzer v. Branning, 1938, 135 Fla. 49, 184 So. 770; In re Lawrence’s Estate, Fla.1950, 45 So.2d 344; Zinnser v. Gregory, *411 Fla.1955, 77 So.2d 611; In re Weiss’ Estate, Fla.App.1958, 102 So.2d 154; In re Coleman’s Estate, Fla.App.1958, 103 So.2d 237; In re Rothman’s Estate, Fla.App.1958, 104 So.2d 607.
The strongest previous case tending to sustain the jurisdiction of the county judge in the case at hand would seem to be Wells v. Menn, supra, which also revolved about an agreement among the beneficiaries under a will. In that case it was held that:
“ * * * The makers of the Constitution did not in terms attempt a detailed specification of the acts contemplated in the jurisdiction of the County Judge but defined that jurisdiction in very broad general terms. Anything reasonably pertaining to the settlement or administration of the estates of decedents and minors is contemplated within the jurisdiction of the probate judge.
“It requires no stretch of the imagination or terms of the Constitution to hold that the settlement agreement in this case was within that category and could be adjudicated as effectively by the probate court as it could probate the will.” [154 Fla. 173, 17 So.2d 218]
However, the countervailing element involved in the instant case, title to real property, did not enter the Wells decision, and hence we cannot consider that case controlling.
Turning then to the line of cases wherein the constitutional grant of exclusive jurisdiction to circuit courts in actions involving title to realty has been held to preclude the county judges’ jurisdiction, we come first to Mott v. First National Bank, supra. The issue in that case was whether the county judge could, in conjunction with the administration of a decedent’s estate, adjudicate the petitioner to be a legal heir of the decedent by virtue of a foreign adoption proceeding. The court reasoned as follows:
“ * * * An adjudication of these questions involves disputed rights in real property, a determination of which requires the interposition of a court of chancery or a court of general jurisdiction proceeding according to the course of common law.
“This proceeding is really a dispute between the widow and natural heirs on the one hand, and this petitioner on the other hand, as to the title to the real estate of which Samuel E. Doane died intestate. A county judge is without jurisdiction to try the title to real property. The title to real property is involved because if petitioner’s status as an adopted child of Samuel E. Doane is competently established in Florida, then by operation of our adoption statutes and statute of descent, title to the real estate of which Samuel E. Doane died intestate descended, subject to the widow’s rights, to the petitioner and natural children of Samuel E. Doane in coparcenary, instead of to the natural children alone. A competent determination of the petitioner’s status therefore determines whether or not petitioner inherited title to an interest in decedent’s real estate; the necessary result of a valid judgment being that one party would gain and another lose an interest in such real estate. See Barrs v. State ex rel. Britt, 95 Fla. 75, 116 So. 28. The proceeding therefore resolves itself into an attempt to try title to real property before the county judge sitting as a court of probate. Article 5, § 11, of the Florida Constitution provides that the circuit courts shall have exclusive original jurisdiction ‘of all actions involving the titles or boundaries of real estate. * * *’ ” [98 Fla. 444, 124 So. 38] (emphasis added)
The emphasized portion of the language quoted above would seem to be particularly applicable to the present case. A judgment involving paragraphs 3 and 4 of the disputed agreement would obviously result *412 in one party gaining and another losing an interest in real estate.
The Mott case was expressly followed in Spitzer v. Branning, supra, but In re Lawrence’s Estate, supra, seemed to create an exception when the following language was used:
“ [ 2] It clearly follows that when, as here, it is made to appear that third parties bona fides assert title adverse to the estate in real estate claimed by the personal representative or beneficiaries to constitute a part of the estate, resort must be had to the Circuit Court to settle such question of title, if this is necessary to a proper administration of the estate. We do not hold that as between the beneficiaries of an estate, claiming as such, real estate, title to which is in question, may not be dealt with as a part of the estate, and the jurisdiction of the County Judge exercised with respect thereto. But, as between the estate (or beneficiaries) and third persons, the determination of title to real estate can only be made by the Circuit Court.” [45 So.2d 345]
At first glance the instant case would seem to fall within this exception, as all the parties to the suit are beneficiaries, both by the will and by statute, however, this alone does not confer jurisdiction upon the county judge, and that was recognized in a recent case from this court, In re Coleman’s Estate, supra. Coleman’s Estate involved certain deeds and mortgage satisfactions which the deceased had made in favor of some beneficiaries and which were contested by others. The above quoted portion of Lawrence’s Estate was quoted, and then Associate Judge Barker went on to say:
“In the present case the grantees were also beneficiaries under the will, but on the question of the validity of the deeds they stood as parties opposing the interests of the estate. See Strickland v. Peters, 5 Cir., 1941, 120 F.2d 53, 55, wherein it is held that the probate court in this State does not have jurisdiction to determine the validity of deeds.
“[ 2,4] County Judge’s Courts are courts of limited jurisdiction under our constitution and statutes. They can exercise only such powers as are directly conferred on them by the Constitution and by legislative enactment and such as may be incidentally necessary to the execution of those powers. Such powers include the determination of the validity of a will but do not include the power to determine the validity of deeds nor the satisfaction of a mortgage allegedly executed by the decedent and delivered during his lifetime. The power to construe wills is specifically delegated to the County Judge’s Court by F.S.A. § 732.41.” [103 So.2d 240]
To further explain this distinction made in Coleman’s Estate we would stress the phrase “claiming as such” in the sentence setting out the exception in Lawrence’s Estate. This qualification makes it clear that the author of the Lawrence opinion had in mind those questions involving real property which probate judges have always handled, and about which there has never been any serious doubt, (See In re Monks’ Estate, supra), such as construing ambiguous devises of realty in wills, ordering the sale of realty to meet expenses of a decedent’s estate, setting out widow’s dower in real property, etc. To be a beneficiary “claiming as such” you must be claiming by virtue of a will or by statute, and in such cases the county judge’s jurisdiction obtains. However, in Coleman’s Estate, while the claimants were beneficiaries their disputed claims were based not on the will, or on any statutorily conferred right, but upon instruments extrinsic to the usual probate proceeding, hence they were not beneficiaries “claiming as such.”
*413 We feel the same rationale is applicable to the present case. If it should appear, after the further proceedings we have suggested in the probate court, that the widow or the children are pressing a disputed claim to realty based on the agreement executed by them, then this extrinsic instrument will also have to be interpreted by the circuit court.
A very similar result was recently reached by the Third District Court of Appeal in the case of In re Rothman’s Estate, 104 So.2d 607. It was therein held that a county judge has no jurisdiction to construe an ante-nuptial agreement between the widow and the decedent, where this construction resulted in depriving the widow of her statutorily conferred right in the homestead property. The Mott and Spitzer cases, supra, were cited as authority for the holding.
As all persons who have any interest under the law of descent of homestead property were parties to the agreement in the instant case there are no different considerations applicable to it than to the other real property involved.
In regard to appellant’s contention that the order of October S, 1956, determined the unenforceability of the disputed agreement, and hence, the issue is res ju-dicata, it will suffice to say that the order is clearly not such a final judgment as will support the doctrine; 19 Fla.Jur., Judgments and Decree, § 132; 50 C.J.S. Judgments § 620, without going into what would be an even more involved jurisdictional question if the order were final.
Appellants have also raised the question of the lower court holding their judgment claims in abeyance, and have argued that the executor bears the burden of proof to show cause why these judgment claims have not been paid. However, this question was before the lower court on petition, and appellants do not contend, nor do we see under the present state of the record, that the judge has abused his discretion in the proceedings thus far had pertaining to the distribution of the estate’s assets.
Reversed and remanded for further proceedings not inconsistent with the views set out in this opinion.
ALLEN, Acting Chief Judge, and SEBRING, H. L., Associate Judge, concur.