**ROE WELLS, JR., NELLE WELLS, and ROE E. WELLS, v. OLGA MENN, individually and as Administratrix, etc., and JOHN M. OGDEN, et al.; ELSIE KING WILCOX and Husband, FRANK WILCOX: RENA ROSE GOODMAN, Appellees-Cross Appellants.**

28 So. (2nd) 881

July 26, 1946

On rehearing October 18, 1946

Adhered to February 4, 1947

June Term, 1946

En Banc

*Redfearn & Ferrell,* for Roe Wells, Jr., Nelle Wells, and Roe E. Wells, *Mitchell D. Price, Zaring, Florence & Barfield* for Rena Rose Goodman, appellants.

*Evans, Mershon & Sawyer, Johnston & Simmons, M. L. Mershon, G. C. Conner, James Kytle Williams and Chadbourne, Hunt, Jaeckel & Brown* (New York, N. Y.) for Olga Menn, individually and as Administratrix of the Estate of Paul L. Menn, Deceased, *Hall & Hendrick* of Miami, *Ausley, Collins & Truett* of Tallahassee for Elsie King Wilcox and her husband Frank Wilcox, on their cross assignments of error, *Wilson Trammell,* for John M. Ogden, co-executor, appellees.

TERRELL, J.:

Roe E. Wells and Nelle Wells were married in October, 1920. Roe Wells, Jr., and two other sons were born to this union. Roe E. Wells and Nelle Wells were divorced in August,

1937. There was a verbal property settlement, not a part of the divorce decree and not pertinent to this litigation. In July, 1939, after Roe E. Wells was married to Emily F. Gilchrist, he made an agreement with Nelle Wells whereby he would assign her one-fourth of what he inherited from the estate of Emily F. Gilchrist Wells. This assignment is pertinent here.

In January, 1938, Roe E. Wells was married to Emily F. Gilchrist. The groom was fifty and the bride was seventy. September 9, 1941, there was filed in the probate court of Dade County a will executed by Emily F. Gilchrist Wells July 8, 1941, in which she bequeathed Roe E. Wells $10.00, Paul Menn and Olga Menn, a nephew and niece, each forty per cent of her estate, and Elsie King Wilcox, a niece, twenty per cent. On the same date there was also filed in the probate court of Dade County a photostatic copy of an alleged will of Emily F. Gilchrist Wells, with petition to reestablish and probate the same. This will was dated August 23, 1941, and bequeathed to Roe Wells, Jr., ten per cent of her estate, to Paul and Olga Menn each ten per cent, and to Roe E. Wells seventy per cent. It named Roe E. Wells and John M. Ogden as executors. There was a third will executed by Emily F. Gilchrist Wells prior to either of the foregoing, dated October 19, 1940, in which Rena Rose Goodman was bequeathed $100,000.

Roe E. Wells wanted to probate the will of August 23, 1941, Paul and Olga Menn and Elsie King Wilcox wanted to probate the will of July 8, 1941, and Rena Rose Goodman wanted to probate the will of October 19, 1940. Paul and Olga Menn, Elsie King Wilcox, and Rena Rose Goodman were in position to contest the probate of the will of August 23 and were threatening to exercise that right, so on January 6, 1942, Roe E. Wells entered into an agreement with Paul and Olga Menn to assign them certain assets of the estate appraised at more than $450,000, on condition that they abandon their right to contest and permit the will of August 23 to be probated. On January 20, 1942, he entered into an agreement with Elsie King Wilcox to pay her a sum of more than $100,000 from his part of the estate on the same condition, and on April 29, 1942, he made an agreement with Rena Rose

Goodman to pay her certain amounts from his part of the estate. On the last named date the will of August 23 was admitted to probate without prejudice to the rights of any persons interested to petition for revocation. Paul Menn died intestate March 22, 1942 and Olga Menn was named administratrix of his estate.

May 11, 1942, Olga Menn, individually and as administratrix of her brother's estate, filed a petition in the probate court praying confirmation of her agreement with Roe E. Wells. The court entered his order of confirmation but held that it did not prejudice the rights of any persons interested in the estate other than Roe E. Wells, Paul Menn, and Olga Menn. On appeal, this court held that the probate court had jurisdiction to confirm the agreement and affirmed its judgment. Wells v. Menn, 154 Fla. 173, 17 So. (2nd) 217.

The agreement between Roe E. Wells and Elsie King Wilcox was on November 14, 1942, confirmed by the probate court on the same conditions as the Paul and Olga Menn agreement. The order of the probate court was affirmed by the circuit court, and no appeal was prosecuted, it having been decided by the parties to rest this case on the decision in the Menn case. The Rena Rose Goodman claim was not confirmed by court order. Roe E. Wells agreed to pay her $25,000 out of his residuary interest and an interest in whatever he might recover as a result of his effort to invalidate the Paul and Olga Menn agreement. He failed in the latter, so the chancellor limited her claim to the $25,000 from Wells' residuary estate.

After the mandate in Wells v. Menn went down, the executors of the estate filed their bill for declaratory decree, in which they prayed the court to construe said agreements and determine the rights and priorities of the claimants. Olga Menn, Elsie King Wilcox, Nelle Wells (ex-wife of Roe E. Wells), Rena Rose Goodman, Roe Wells, Jr., Roe E. Wells, individually, and Miami Beach First National Bank were named defendants. The defendants each filed answers defining the basis of their claims and asserting reasons why they should be given priority in payment over other defendants. Miami Beach First National Bank is by order of the probate

court custodian of the assets of the estate and entered an appearance.

On final hearing, the chancellor decreed that the bequest to Roe Wells, Jr., was unaffected by said agreements and should be paid from the net estate; that the agreement between Paul and Olga Menn and Roe E. Wells was enforceable and entitled to priority of payment over other claims from Roe E. Wells' distributive part of the estate; that the claims of Elsie King Wilcox, Rena Rose Goodman, and Nelle Wells were good and payable in the order named from Roe E. Wells' distributive share of the estate. Roe Wells, Jr., Nelle Wells, Roe E. Wells, and Rena Rose Goodman appealed from the declaratory decree. Elsie King Wilcox filed cross-assignments of error from the order dismissing her counterclaim and from that part of the final decree making her third in priority of payment.

The first question for determination may be stated as follows: The will of Emily F. Gilchrist Wells bequeathed "ten per cent of my estate" to Roe Wells, Jr., and "all the rest, residue, both real and personal of any kind and description, and wheresoever situated, that shall belong to me, or that shall be subject to my disposal" to my husband, Roe E. Wells. Did Roe Wells, Jr., take ten per cent of the gross estate or ten per cent of the net or distributable estate, after the payment of debts, taxes, and expenses of administration?

Appellants contend that Roe Wells, Jr., should receive ten per cent of the gross estate. To support their contention, they rely on Sections 734.05 and 734.06 Florida Statutes 1941; Murphy v. Murphy, 125 Fla. 855, 170 So. 856; In re: Bernay's Estate, 150 Fla. 414, 7 So. (2nd) 444; Rabalsky v. Kook, 87 N.H. 56, 173 Atl. 803; Wilcox v. Beecher, 27 Conn. 134, 49 Century Digest 1521; Bell v. Raymond, 20 Conn. 337, 49 Century Digest 1521; and Fisk v. McNeil, 2 Miss. (1 How.) 535, 49 Century Digest 1521.

They contend that the legacy to Roe Wells, Jr., is a general legacy; that the legacy to Roe E. Wells is a residuary legacy; that the former is superior to the latter; and that under the law of Florida the residuary estate is required to pay all

taxes, debts, and costs of administration before general legacies abate—reduce because of insufficiency of funds in the estate to pay debts, costs, taxes, and expenses of administration.

The statutes relied on recognize the general classification of legacies, to wit: residuary, general, demonstrative, and specific, and the order of payment or abatement. They also recognize or prescribe an order in which debts, taxes and other charges against an estate shall be paid when no provision is pointed out by the testator, but we do not think these statutes or the cases relied on rule the case at bar, because the will points out the manner of distribution and requires all charges against the estate to be paid.

We approve the better rule which provides that when a testator devises ten per cent of his estate, or any fractional part thereof, to a named beneficiary it has reference to ten per cent of the net or distributable part of the estate. Henderson v. Usher, 125 Fla. 709, 170 So. 846; Estate of Hinckley, 58 Cal. 457; Zimmer v. Gudmudsen, 142 Nebr. 260, 5 N.W. (2nd) 707; In re: Kirby Estate, 199 Cal. 135, 248 Pac. 517; Stark v. McEwen, 15 Ohio App. 188; Blakeslee v. Pardee, 76 Conn. 263, 56 Atl. 503; Smith v. Terry, 43 N.J. (Equity) 659, 12 Atl. 204; Barnett's Appeal. 104 Pa. State 342; Briggs v. Hosford, 22 Mass. (Pickering) 288.

We find nothing in Murphy v. Murphy or In re: Bernays' Estate that conflicts with this rule; neither do we think it is in conflict with the statutes and cases relied on by appellants. The will provides in terms that "all my just debts shall be paid as soon after death as practical." We think this language evidences the purpose of the testatrix that all debts, taxes, and other charges be paid from the gross estate. It would not accord with reason to hold that the testatrix intended that the son of her husband's ex-wife should receive his bequest from the gross estate, while the husband and the blood nephew and nieces should take theirs from the net estate and bear all the debts, taxes, and other burdens of administration. To enforce any other rule under the present schedule of income and inheritance taxes would work an undue hardship on the residuary estate.

It is next contended that Paul and Olga Menn are barred from receiving any sums from Roe E. Wells' residuary part of the estate because they violated the non-contest provision of the will by filing their answer to the petition to probate, in which they challenged the bona fides of the will.

Paragraph eight of the will provides that if any legatee shall in any manner directly or indirectly contest or question the acts of the testatrix in making said will, such legatee shall forfeit his legacy and shall "thenceforth cease to have any right, title, or interest in or any portion of my estate." Did Paul and Olga Menn forfeit their legacy under this provision by filing an answer to the petition to probate challenging the bona fides of the will and demanding strict proof thereof?

Read in full, it would be difficult to write a noncontest clause that more completely shuts out a contesting legatee. The rule is that such clauses will not be enforced against a legatee who files a bill for the construction of a will or who contests it in good faith for probable cause, unless there is a limitation of the estate over to another person. If there is such a limitation, the contesting legatee is penalized by the loss of his legacy, unless resort to the courts was for the purpose of settling doubtful rights under the will or to determine how far his interest might be affected by it and not for the purpose of destroying the will or any of its provisions. In re: Brush's estate, 154 Misc. 480, 277 N.Y.S. 559.

We do not think the answer filed by Paul and Olga Menn came under the condemnation of the non-contest provision of the will. There was no limitation over, and it did nothing more than require the proponent to provide evidence to show that the will offered for probate was the bona fide will of the testatrix. The law requires that; then it is well settled that a forfeiture provision does not become effective when a beneficiary, in good faith and for reasonable cause, questions the validity of the will. The Menns had ample "cause" to question the validity of the probated will. They were beneficiaries under the will of July 8 and the will of August 23 (probated will) and to a much larger extent under the former will than under the later, which was produced under highly question-

able circumstances that were ample to relieve them from the penalty of the forfeiture provision.

The questions assaulting the validity of the Menns' claim cannot be answered in isolation. They must be resolved in the light of the environment out of which they arose, the controlling points of which are that Roe E. Wells and Nelle Wells were divorced in August, 1937; about five months later he married Emily F. Gilchrist, who was twenty years his senior and was reputed to be worth more than $1,750,000. About three years and half after they were married she executed the will of July 8, in which she gave Roe E. Wells $10.00, Paul and Olga Menn each forty per cent of her estate, and Elsie King Wilcox twenty per cent. Less than two months later she executed another will, in which she gave Paul and Olga Menn each ten per cent of her estate, Roe Wells, Jr. ten per cent, and Roe E. Wells seventy per cent. It is shown that the latter will was executed by the testatrix thirteen days before her death, when she was on her deathbed in a New York hospital suffering from cancer, in constant pain, and under the influence of opiates. It is alleged to have been dictated by Roe E. Wells and to have been prepared by his counsel.

We find charges in the record that said will was secured through undue influence and that the divorce of Roe E. Wells from Nelle Wells was the product of a conspiracy that he might contract the marriage with Mrs. Gilchrist to increase his shekels. The fact that the latter will turned eighty per cent of a large estate into the hands of Wells and his son by the former wife does not detract from these charges. They may also explain why Roe E. Wells sought a settlement with the Menns, Wilcox, and Goodman on condition that the will be probated without contest. The fact that the testatrix was a citizen of Miami, Florida, and died in New York, that Paul and Olga Menn and Elsie King Wilcox were citizens of California, that Rena Rose Goodman was a citizen of Chicago, and that Paul Menn was dead, thus complicating their right to contest the probate of the will, may account for their willingness to setle their claims against the estate with Roe E. Wells and abandon the contest. When a fifty year old man

quits his family and contracts marriage with a seventy year old woman of large means and promptly at her demise devises a plan to divert ninety per cent of her estate to his own coffers in the manner shown here, there is at least a suspicion for titillating the ears of the curious, and even a chancellor might assume that there was something besides amorous dalliance to fortify the romance.

This was the picture that confronted the chancellor when he undertook to determine the validity and priority of the Menns' claim. He was also impressed with the fact that the welfare of Paul and Olga Menn was of deep concern to the testatrix, since she remembered them in both wills. The validity, vel non, of their claim must be distilled from this picture; it cannot be determined by dealing in legal abstractions and procedural niceties divorced from it. The main attack of appellants is leveled at the Menns' claim. The idea seems to be that if it can be disposed of there will be assets enough left to satisfy the other claimants. In addition to invalidity it is contended that Roe E. Wells overestimated the value of the estate when he traded with the Menns, Wilcox, and Goodman and that if he is required to meet his commitments with them in full his residuary estate will be exhausted and there will be nothing left to meet his commitment with his former wife. Thus he says that in equity the claims of all claimants should be scaled down so as to meet all his commitments and leave a share for himself. He seeks, in other words, to shift the pinch of the law to victims that were in no wise responsible for it.

A diligent search of the record reveals no equity whatever in favor of Roe E. Wells—had as well search for rubies in the corncrib as for equity in his behalf. If there had been a marked *advance* in the assets of the estate, he would hardly have implored the chancellor for permission to divide the profit with the claimants. The written law sometimes drives the court to conclusions that seem contrary to human experience, but not true with a court of equity. A court of equity will not function in a conglomeration of abstractions; it arrives at its judgments by the application of settled principles to proven facts. It is undergirded by moral precepts that

give it a character indigenous to this country but inscrutable to every species of dictatorship. Stripped of this, it is as vapid as the defense in the old case related by the Greek sophist about the owner of the copper kettle who demanded recompense for its damage. The borrower denied the right to recover on three grounds, viz: (1) that he never borrowed the kettle, (2) that if he did it was damaged when he got it, and (3) that it was in good shape when he returned it.

So we find nothing in law or equity to support the assertion of invalidity of the Menns' claim. It is not covered by positive statute or precedent, and, when this is the case, the court may indulge the rule of reason, which stems from the concept that law rests on morals and that the court has a duty to uphold that relationship. We are mindful of the fact that the sociological and the pragmatic jurist repudiates this theory, but, when he does, he substitutes group will in place of the rule of reason as law. At any rate, Roe E. Wells' conduct reveals a rhythm of legal apostasy difficult to reconcile with any rule of law.

It is next contended that the settlement agreement of January 6, 1942, between Roe E. Wells and Paul and Olga Menn is void, because Roe E. Wells, being a mere residuary legatee, was not authorized to pledge the assets of the estate in the manner shown and that said agreement was never completed, in that there was no meeting of the minds of the parties thereto.

The purpose of the settlement agreement was to adjust the claims of Paul and Olga Menn to the estate of Emily F. Gilchrist Wells and permit the will of August 23 to be probated. Paul and Olga Menn had legacies in the will of July 8 and in that of August 23. Roe E. Wells was a mere nominal legatee in the first will, but in the last will he received seventy per cent of the estate. We understand the rule to be that the parties interested may make such agreements. Nelle Wells was nothing more than the equitable assignee of Roe E. Wells and is bound by his agreements.

Paul and Olga Menn elected to stand on the memorandum agreements and treat them as the final agreement. It is shown that they were agreed to by Roe E. Wells. In accepting

them, Paul and Olga Menn surrendered their right to contest the will of August 23, and Roe E. Wells became entitled to nine-tenths of the estate. It was confirmed by the county judge, whose confirmation was approved by the circuit court and this court, the order of confirmation being "without prejudice to the rights or interests of any person interested in said estate other than the Menns and Roe E. Wells." All the parties had such an interest as authorized them to make the agreement, and we think it was valid and binding on them and on Roe E. Wells' assigns.

Likewise, we find no merit in the contention that the settlement agreement between Roe E. Wells and Paul and Olga Menn is contrary to public policy. This contention is based on the assumption that the law of Florida requires all valid wills to be probated, that Paul and Olga Menn had no right to contest the probate of the will of August 23, but that for a price they agreed to its probate at the time they were asserting its invalidity and while they were contending that the will of July 8 was the valid will.

We do not think this interpretation finds support in the record. Paul and Olga Menn were beneficiaries under both the July 8 and August 23 wills, but they concealed nothing with relation to their interest in them. The settlement agreement and the motion to withdraw the answer to the petition to probate were one and the same instrument, and the court and all parties interested were then and there advised that the settlement agreement was the consideration for withdrawing the answer and permitting the will of August 23 to be probated. It could not with consistency be contended that the settlement agreement was valid as to Roe E. Wells but void for public policy as to all his assignees.

We understand the general rule to be that a bona fide agreement entered into by those interested in an estate to refrain from contesting a will distributing the assets is good and will be upheld on the theory that it reduces litigation and expedites settlement. The fact that Olga and Paul Menn were named as beneficiaries in the will of July 8 and in that of August 23 gave them such an interest in the estate as to qualify them to make the agreement.

It is next contended that the chancellor committed error in adjudicating the Menn agreement to be prior in time of payment to the Nelle Wells agreement; that all agreements made by Roe E. Wells for the distribution of the estate should stand on equal footing; and that, if the assets of the estate are insufficient to pay all beneficiaries and their assigns in full, then the part of each should be scaled down in proportion that the true value of the estate bears to the supposed value at the time they were made.

In support of this contention, appellants say that Nelle Wells' claim should be paid first because the executor had notice of it when the other claims matured; that the Menn and Wilcox claims, having been made later, in no way affect the Nelle Wells claim; that Menns and Wilcox knew, or should have known, that the Nelle Wells claim was outstanding and contracted with Roe E. Wells subject to it. Summarized, this contention is that those who contracted with Roe E. Wells participate in the proceeds of the estate as of the date of their contract and not as of the date notice thereof was given to the executor.

We do not consider that Nelle Wells is in any such position, with reference to the estate of Emily F. Gilchrist Wells, as were Paul and Olga Menn. She was not a creditor, heir, or legatee of the testatrix; she was the mere assignee of Roe E. Wells, and her claim arises through him and not through the estate. Paul and Olga Menn were blood relatives of the testatrix; they were named as beneficiaries in both wills. They had a right to contest the latter will, except for which they would have received eighty per cent of the estate. They agreed to take named assets in full settlement of their claim; they had no notice of the Wilcox agreement, which did not come into existence until January 20, 1942. The probate court, circuit court, and this court confirmed their settlement agreement, and we think the chancellor correctly held that the Menn claim was entitled to priority in payment over the Nelle Wells, Wilcox, and Goodman claims.

The question of scaling down the Menn, Wilcox, and Goodman claims was raised by counterclaim filed on behalf of Roe E. Wells, in which it is alleged that a mutual mistake was

made as to the value of the estate and that if he is now required to pay said claims in full his residuary estate will be exhausted.

The chancellor granted motions dismissing the counterclaim, and we find no reason to reverse him on that point. Neither do we find anything to support the alleged mistake as to the value of the estate but the bare assertion of Roe E. Wells, and that is inconsistent with statements he previously made with reference to the value of the estate. The chancellor denied him relief, and he was in much better position to know the merits of his claim than we are. Since this question has been previously discussed, it becomes unnecessary to enlarge on it further.

Counsel for Rena Rose Goodman have filed a brief in which they assault the validity of the agreement between Roe E. Wells and the Menns and contended that the chancellor committed error in approving the Menns' claim.

It appears from the record that Rena Rose Goodman was a beneficiary under the will of October 19, 1940. After the will of August 23 had been probated and after the agreements with the Menns and Wilcox had been filed with the probate court, Rena Rose Goodman entered into an agreement with Roe E. Wells by which Wells was to pay her $25,000 from his share of the funds of the estate and, if successful in setting aside the Menns' claim, an additional sum of $117,000 from his share of the estate. This agreement was never filed in the probate court, and Wells failed in his effort to set aside the Menn agreement.

In addition to the grounds of invalidity to the Wells-Menn agreement heretofore discussed, Rena Rose Goodman urges that it was invalid because Wells was not at the time a representative of the estate as contemplated by Sections 733.18(2) and 733.15, Florida Statutes 1941.

We do not think the Menns' claim was such a claim as was contemplated by Section 733.18(2). This statute has reference to claims for labor, those arising from accounts for material furnished, or those that have their inception in other transactions with the testatrix. It has no reference to a situation like this, where parties claiming as legatees or

distributees compose their difference and enable the settlement of the estate to proceed. Such settlements may be made at any time after the death of the testator, and, when approved by the court, there is no reason why they should be itemized or sworn to. Other points raised by Rena Rose Goodman have been heretofore covered, so we refrain from further discussion here.

Counsel for Elsie King Wilcox have filed cross-assignments of error from the order dismissing her counterclaim and from that part of the order making her third in priority of payment. It is contended that all claimants under the Wells agreements are bound by the Wilcox settlement agreement and that in equity her claim should be prior in payment in any of them.

This contention is predicated on the charge that she waived her contest of the will and took an agreement from Roe E. Wells, one of the executors, for a stated sum; that such agreement was binding on the estate; that she acted thereon and cannot now be restored to her former position.

We have carefully reviewed this contention, but, in view of the record and what we have previously said, we do not find that the chancellor committed error in holding that Elsie King Wilcox was third in point of distribution. She was in no different position from the Menns, insofar as being restored to her former position, which, like them, she voluntarily surrendered that her interest in the estate might be adjusted and the will of August 23 admitted to probate.

It follows that the decree of the chancellor is in all respects affirmed.

Affirmed.

CHAPMAN, C. J., BROWN, BUFORD, THOMAS, ADAMS and SEBRING, JJ., concur.

ON REHEARING

PER CURIAM:

This cause comes on to be heard on the petitions for rehearing of Roe Wells, Jr., Nelle Wells, Rena Rose Goodman, and Elsie King Wilcox. The petitions of Roe Wells, Jr., Nelle Wells, and Rena Rose Goodman have been considered and the

record as to them has been re-examined. We find no error in our opinion and judgment of July 26, 1946, so each of said petitions for rehearing is hereby denied.

As to the petition of Elsie King Wilcox, it now appears that there has been a material depreciation in the value of the assets of the estate to be distributed and that, if the claims of Roe Wells, Jr., and the claim of Olga Menn, individually and as administratrix, are paid in full, Elsie King Wilcox will, on account of the priority in distribution, adjudged in our main opinion, be required to bear an undue portion of the burden of administration and may in turn receive a materially reduced part of the legacy awarded her. The record reveals, however, that as to equities, right to contest, and identity, in other respects, that entitle her to participate in the estate, the position of Elsie King Wilcox is no different from that of the other legatees held to have a prior right of payment from the assets.

In the light of these facts, the petition of Elsie King Wilcox is hereby granted, and our judgment of July 26, 1946, is amended so as to authorize the court below to consider the foregoing and if on examination he finds that the assets of the estate have in fact depreciated in value, so that the claim of Roe Wells, Jr., the claim of Olga Menn, individually and as administratrix, and the claim of Elsie King Wilcox cannot be paid in full after the costs of administration are paid, then in that event Roe Wells, Jr., Olga Menn and Elsie King Wilcox shall participate in the distribution of the residue in the proportion that the amount awarded to each bears to the amount available for distribution after deducting the cost of administration, and the Chancellor shall so order.

In all other respects our former judgment and finding is re-affirmed on rehearing.

It is so ordered.

CHAPMAN, C. J., TERRELL, BROWN, BUFORD, THOMAS and ADAMS, JJ., concur.

PER CURIAM:

This cause comes on to be disposed of on petition for rehearing as to order of October 18, 1946, granting petition for rehearing as to Elsie King Wilcox, opinion filed July 26, 1946.

Briefs were permitted to be and were filed in support of and in opposition to said petition for rehearing. The case has again been reviewed and Mr. Chief Justice THOMAS, Mr. Justices BUFORD, CHAPMAN and Associate Justice FABISINSKI are of the view that the rehearing should be granted and our opinion of October 18th, quashed and the original opinion July 26th, reaffirmed and adhered to as promulgated. Mr. Justice TERRELL and Mr. Justice ADAMS are of the contrary view.

It follows that the rehearing is granted and our order of July 26, 1946 is reaffirmed and adhered to.

It is so ordered.

THOMAS, C. J., TERRELL, BUFORD, CHAPMAN, ADAMS, JJ., and FABISINSKI, Associate Justice, concur.

