368 So.2d 1350 (1979)
In re ESTATE OF Frederic C. COLLIN, Deceased.
No. 77-1642.
District Court of Appeal of Florida, Fourth District.
March 21, 1979.
Rehearing Denied April 18, 1979.
James F. Cooney, Jr. of Coe & Broberg, Palm Beach, George S. Okell, Jr., West Palm Beach, Paty, Downey, Lewis, Eaton, Fick & Martin, Palm Beach, for appellants.
James Pressly, Jr. of Gunster, Yoakley, Criser, Stewart & Hersey, Palm Beach, for appellees.
*1351 LETTS, Judge.
This appeal arises from a lower court ruling that the Florida apportionment statute was not applicable to a residuary estate devised and bequeathed to a combination of charitable and non-charitable beneficiaries; such a result arrived at, notwithstanding the fact that the will contained no explicit language shifting the exclusive tax burden away from those liable for the tax. We affirm.
We have no Florida Law on the particular subject and there is a division of authority in other states (see 69 A.L.R.3d 113 § 3b). For this reason, recognizing the far reaching consequences of our holding and deeming the issue to be of great public interest, we hereby certify the following question to the Supreme Court:
IF THE INTENT OF A TESTATOR TO SHIFT THE EXCLUSIVE TAX BURDEN AWAY FROM THOSE LIABLE FOR THE TAX IS MANIFEST FROM THE DIRECTIVE LANGUAGE CONTAINED IN HIS LAST WILL AND TESTAMENT, DOES HIS FAILURE TO EXPLICITLY SO DIRECT, REQUIRE THAT CHAPTER 733.817(1)(b) BE APPLICABLE TO A RESIDUARY ESTATE, SO THAT CHARITABLE BENEFICIARIES DO NOT SHARE IN THE TAX BURDEN?
The charities argue that the answer to the above question is in the affirmative[1] citing, principally, In Re Heit's Estate, 26 Misc.2d 774, 206 N.Y.S.2d 59 (Sur.Ct., N.Y. Cty. 1960). We agree that Heit, despite an added twist of pre-residual beneficiaries, would require that the answer to the question be in the affirmative. In Heit there were two initial clauses which provided:
"First: I direct that my debts and funeral expenses and the expenses of administering my estate, including the inheritance taxes thereon, be paid as soon after my death as may be convenient."
"Second: I direct that all legacy, inheritance, transfer or other similar taxes or duties shall be charged against my residuary estate."
Thereafter paragraph twelfth provided:
"Twelfth: I give, devise and bequeath ALL the rest, residue and remainder of my estate, real personal or mixed, of whatsoever kind and wheresoever situated, of which I may die seized or possessed or to or in which I may have any power of appointment, in manner following, absolutely and forever:
* * * * * * * * * *[2]
i. To the Hebrew Home and Hospital for Chronic Sick, Twenty-Five Per Cent (25%), in memory of my beloved father and mother, Morris and Rebecca Heit, for the establishment of a bedroom, and it is my wish that an appropriate plaque be placed at the entrance to said room.
* * * * * *
j. To my Executors Twenty-Nine Per Cent (29%) to be disposed of in their absolute and uncontrolled discretion to various charitable institutions to be selected by them... ."
The Heit court went on to state that statutory apportionment should apply "... unless directions in the will to the contrary are explicit, clear and unambiguous." They then held that a testator's direction that taxes be paid from a residuary estate "`... cannot be read as a mandate that the portion of the tax attributable to the residuary assets is not to be apportioned in an equitable manner among the recipients of such residuary gifts.'" (Heit, 26 Misc.2d 774, 206 N.Y.S.2d at p. 61, quoting Matter of Coulter's Estate, 11 Misc.2d 851, 173 N.Y.S.2d 425).
We do not agree and choose instead to adopt the language of the courts of Kentucky which reason that where the taxes *1352 are grouped with debts, expenses and costs of administration and are coupled with a clause directing that the residue be divided into equal portions, then such direction indicates that the testator intended after-tax equality. University of Louisville v. Liberty National Bank and Trust Company, 499 S.W.2d 288, 289 (Ct.App.Ky. 1973).
In the preceding paragraph we have emphasized the word "indicates" and in so doing recognize that the Kentucky Law is not based on a statute such as Florida possesses. This latter requires not merely an indication of the testator's intent but also a direction from him.
We also acknowledge that the facts of the University of Louisville case reveal that the residuary language provided for division "into two (2) equal portions" whereas in Heit the bequests were of varying percentages. Nonetheless we perceive no substantial difference between two beneficiaries receiving 50 per cent each and the same two beneficiaries receiving two equal portions. The same rationale holds true even if the percentages are uneven. For example, a statement that beneficiary A is to receive 25 per cent and beneficiary B 75 per cent, inescapably leads us to believe that the testator intended beneficiary A to receive one quarter and B to receive three quarters, without legislative distortion. It would appear to defy common sense to suppose (if beneficiary A is a charitable organization and the total estate tax is $500,000 with a residuary estate of $1,000,000) that the testator intended by the use of these percentage figures to have the charity receive $250,000 and the other beneficiary the EXACT SAME SUM despite the direction that the one beneficiary receive only 25 per cent while the other succeed to 75 per cent.[3] The result in such event is 50 per cent each, a distribution which would make a nonsense out of the chosen language.[4]
To reasoning such as the above, the appellant makes three telling responses.
First, that regardless of what the testator intended the statute commands an explicit direction and there was none. Second, that notwithstanding that the polestar of all will interpretation is the testator's intent [In re Johnson's Estate, 347 So.2d 785 (Fla. 1st DCA 1977) aff'd 359 So.2d 425 (Fla. 1978)] the decedent is presumed to know the law. In re Shubert's Will, 10 N.Y.2d 461, 225 N.Y.S.2d 13, 180 N.E.2d 410 (Ct.App. 1962). Third, the question is asked: Why should the charitable beneficiary's share be reduced to help pay a tax that it is not responsible for?
Answering these three points we believe,
1. That while there is no explicit direction, the intent is clear and unambiguous and the language employed otherwise directs distribution without apportionment.
2. The presumption that the decedent knows the law should not be without its limitations in complex will drafting. In the case at bar, the draftsman himself gave no thought to it and certainly did not explain it to his lay client. More to the point, in the light of the clear and unambiguous direction, there is no presumption that is offended here.
3. Since the testator can legally and enforceably direct distribution without apportionment even though the charity contributes nothing to the tax burden and if he did so here, the point is without merit.
Addressing ourselves to the will at bar, we find an instrument drawn by an attorney who himself testified that he gave no thought of the tax consequences to charitable, vis a vis non-charitable, beneficiaries.[5] We certainly believe him, for the will he prepared is a textbook example of why the Florida Bar is pushing for specialization. It reads in its entirety:

*1353 I, FREDERIC C. COLLIN, now a resident of Florida, being of sound and disposing mind and memory, do, for the purpose of disposing of my property upon my death, hereby make and ordain this as my Last Will and Testament.
I.
I do hereby revoke, cancel and annul any and all wills, codicils, or other testamentary dispositions heretofore made by me.
II.
I do hereby direct that all my just debts, estate taxes, and expenses of my last illness and funeral expenses be paid out of my estate.
III.
I do hereby name my friend, PAUL POTTER, of West Palm Beach, Florida, as Executor of my estate in Florida Probate proceedings. I do hereby name my friend and attorney, HAROLD M. SHAPERO, of Detroit, Michigan, as Executor in ancillary proceedings, in Michigan, and in the event he is unwilling, unable, or incapacitated to so act, I do name WALTER SHAPERO, of Detroit, Michigan, as such Executor.
IV.
I do hereby give and bequeath to my nephew, GEORGE HERIS, the sum of FIVE THOUSAND ($5,000.00) DOLLARS. I do hereby give and bequeath my clothing, jewelry, saddles, athletic equipment, automobiles, furniture, and similar personal belongings to my brother, JAMES COLLIN, if he be alive at the time of my death, and if he be not alive, then to my brother, PERICLES CALLIMANOPULOS.
V.
All the rest, residue and remainder of my property of every nature and description I do hereby give to the following persons in the following percentages, to-wit:

 A. To my sister, BABY PAPDOPULOS, of
 Athens, Greece  10%
 B. To each of the two children of BABY
 PAPDOPULOS  5% each, totalling  10%
 C. To JAMES COLLIN, my brother, of Fort
 Worth, Texas  15%
 D. To MARIETTE COLLIN, my sister, of
 New York City, New York  2 1/2%
 E. To ELDRED LIND, my friend, of Detroit,
 Michigan  10%
 F. To the following children of my brother,
 PERICLES CALLIMANOPULOS:
 (1) KATHERINE 2 1/2%
 (2) MARY 2 1/2%
 (3) GREGORY 2 1/2%
 (4) DOMNA 2 1/2%
 G. To BETHESDA CHURCH OF PALM
 BEACH (Episcopalian) 5%
 H. To the U.S. POLO ASSOCIATION (having
 headquarters at Park Avenue, New
 York City, New York)  2 1/2%
 I. To GULF STREAM POLO CLUB (now
 located on Lake Worth Road, Palm Beach
 County, Florida)  5%
 J. To PERICLES CALLIMANOPULOS and
 his wife, ANNA  10%
 K. To ST. CATHERINE GREEK ORTHODOX
 CHURCH of West Palm Beach,
 Florida  5%
 L. To FIRST NATIONAL BANK OF
 PALM BEACH, FLORIDA, as Trustee  15%
 (or remaining
 percentage)

The FIRST NATIONAL BANK OF PALM BEACH, as Trustee, shall use funds received to promote polo and tennis as a sport, especially for young players. In connection with polo, I request that they consult with my friend, GEORGE OLIVER, of Delray, Florida, and with respect to tennis, that they consult with my friend, MRS. NANCY ORTHWEIN. I request the U.S. POLO ASSOCIATION to use the proceeds to promote polo among young players, and provide an annual trophy cup in my name.
VI.
If any legatee or devisee under this Will be not alive at the time of my death, then the share of such deceased legatee or devisee shall not lapse but shall go to the next of kin of such legatee or devisee.

*1354 VII.
If any legatee, devisee, or beneficiary under this Will, or their guardian, contests this Will, such person and the ward of such guardian shall receive no share of my estate under this Will, and the share of any person making any such contest shall go to increase pro rata the shares of all other legatees and devisees and beneficiaries under this Will, proportionately. IN WITNESS WHEREOF, I have hereunto set my hand and seal at Detroit, Michigan, this 29th day of June, 1965, to one (1) executed copy only, said Will consisting of three (3) pages.
First we note the direction in paragraph II to pay the estate taxes and approve of the further reasoning in the University of Louisville case (supra, 499 S.W.2d p. 289) as follows:
1. The taxes are grouped with the debts, funeral expenses and costs of administration in the direction in Clause No. 1 as to payment, and since the latter items clearly are payable "off the top" the indication is of the intent that the former be paid in the same way.
* * * * * *
4. Clause No. 1 would be pure surplusage or "boilerplate" if not construed as evidencing the intent that the taxes be paid "off the top."
We also note this reasoning has been adopted in Florida although the case referred to involved neither a probate asset nor a charitable bequest. See In re Barret, 137 So.2d 587, 592 (Fla. 1st DCA 1962). The non-charitable beneficiaries also urge upon us the case of In re Moritz' Will, 48 Misc.2d 323, 264 N.Y.S.2d 734 (Sup.Ct., Nassau Cty. 1965) which likewise approved the grouping procedure as satisfying the requirement of "otherwise directing." However, this case is weak authority in that a later provision in the Moritz will, directed distribution "after the payment of taxes."
The above "grouping" argument would not be enough direction in and of itself, but resort to the residuary clause additionally reveals a detailed disposition of the residue by percentages. It is impossible to envisage that the testator knew or had the faintest intention that the 10 per cent "given" to PERICLES and ANNA CALLIMANOPULOS would not be equal to the 10 per cent left to the two churches when even his lawyer had no such thought.[6] On the contrary we hold that the setting forth of these percentages coupled with the direction in paragraph II constituted, in sum, an unambiguous direction that all should share equally in the residue, despite the lack of an explicit statement to the executor that the residuary estate be distributed without apportionment.[7] We agree with a recent Maryland case interpreting a will with similar "grouping" of expenses, taxes and debts and an apportionment statute with "otherwise provided" language. Therein the court stated:
"The principal rule in determining the effect of a tax clause in a will is to glean the testamentary intent... . Intention is the thread by which we weave our way through the Minotaur's maze." Hall v. Johnson, 38 Md. App. 589, 382 A.2d 332 (1978)[8].
We are conscious that our holding may cause comment that judges likewise be required to specialize and we are fully aware that our interpretation of the statute, as it applies to this particular will, may be thought to be somewhat of a retrogression back to the Legislature's much criticized *1355 1957 codification of the old common law concept. We also are cognizant of the fact that this result increases the overall tax to be paid. Finally, we are aware of the possibility for paradox in recognizing, on the one hand, that the draftsman was ignorant of the tax consequences, while holding on the other that the testator "otherwise directed." Nonetheless the chosen language, according to his testimony, was intended by the draftsman to result in after tax equality. Moreover, the use of percentages, coupled with the earlier grouping provision, would appear clearly to direct that very same result. We do not believe that the statute mandates the use of certain magic words known only to the Probate Section of the Florida Bar. A clear and otherwise unambiguous direction is all that is required and we believe the instrument now before us so directs.
We specifically limit this decision to the circumstances of this particular case and do not pass on any future litigation relative to non-probate assets or to other fact situations even though they may appear to frustrate the testator's obvious and unambiguous direction. Such limitation is deemed appropriate until the Supreme Court has responded to the question we have here propounded.
AFFIRMED.
MOORE, J., concurs.
DAUKSCH, J., dissents with opinion.
DAUKSCH, Judge, dissenting:
I respectfully dissent.
In his will the decedent, Mr. Collin, left five thousand dollars and various personal effects to his nephew and brother. The remainder, or residue, of his property he left to various beneficiaries. Some of these beneficiaries are charities and under the federal estate tax code bequests to charities are exempt from sharing in the tax because they are not included in the "taxable estate." 26 U.S.C. § 2055. More precisely, testamentary gifts to qualified charities are not included in the gross estate for tax purposes.
Section 733.817(1)(b), Florida Statutes (1977) provides that unless the testator directs otherwise charity beneficiaries do not have to suffer the reduction in their share of the estate by the payment of estate taxes; that is, they get their percentage off the top before the tax payment is apportioned among the remaining non-charity residuary beneficiaries. This is so because testamentary gifts to charities are not "interests included in the measure of the tax" as mentioned in Section 733.817(1)(b), Florida Statutes (1977).
The question comes down to whether Mr. Collin in his will adequately "otherwise directed" as required in Section 733.817(1)(b), Florida Statutes (1977) in order to take this estate from under operation of that statute and require that the charity beneficiaries share in the payment of the estate taxes by having their shares figured after the estate taxes are paid instead of before those taxes are paid.
The boilerplate testamentary direction "I do hereby direct that all my just debts, estate taxes, and expenses of my last illness and funeral expenses be paid out of my estate" which appears in Article II of Mr. Collin's will is not sufficient, in my opinion, to satisfy the Section 733.817(1)(b), Florida Statutes (1977) requirement "except as otherwise directed by the will." Of course, there is no necessity for this clause in a will because what the testator is directing is exactly what the law requires; all just debts proved after proper claim and taxes are first paid, by law. Section 733.701, Florida Statutes (1977) et seq. But still, I venture to say almost every will has this provision. As is noted in the majority opinion the attorney who drafted the will testified no thought was given to Section 733.817(1)(b), Florida Statutes (1977) thus further showing an inadequate "direction otherwise" required under the statute. The admissibility of the draftsman's testimony was not challenged here and was admitted in evidence, but it should be viewed by all as at least self-serving. In my opinion the greater weight should be given to the plain wording of the will itself and special attention *1356 should be given to the fact that the will did not make any direct or indirect reference to a distinction between charitable and non-charitable bequests. Just like the majority here, I should like to see the charity beneficiaries share in the tax burden but I cannot get around the fact that the will fails to comply with the statute. If the testator or his attorney when drafting the will had provided something like "all residuary beneficiaries shall receive their proportionate shares without the preference for the charity beneficiaries provided in Section 733.817(1)(b), Florida Statutes (1977)" then I would find a specific "direction otherwise" as is contemplated in that statute. But, again, the simple, boilerplate, inadequate phraseology in Article II of Mr. Collin's will is just that, inadequate.
If the non-charity residuary beneficiaries can establish the real intent of the decedent was thwarted by negligent draftsmanship or the like then a remedy may be available. McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976).
I would reverse the trial court and remand to have the charity residuary beneficiaries paid their percentage shares before the deduction of estate tax amounts and require the non-charity residuary beneficiaries, unfortunately, to assume the entire tax burden.
NOTES
[1] We concede, of course, that the charities also argue that, even although there is no explicit direction, there is likewise no manifest intent apparent from the language of this particular will. We disagree as a continued reading of this opinion will demonstrate.
[2] We must assume then the ten asterisks involving (a) through (h) involve non-charitable beneficiaries.
[3] This example is given without reference to mutually dependent indeterminates.
[4] But see contra examples defying common sense. 35 Fla.Bar Journal 164, Alan Lindsay, Florida's Estate Tax Laws  The Need for Compromise (March 1961).
[5] The testimony of the draftsman was admitted without objection. However, reference to it here is but added "piquance" and no testimony is necessary to clear up ambiguity for we hold no such ambiguity existed.
[6] The charities point to the parenthesized words in Article V of the will "or remaining percentage" and suggest they obviate after tax treatment based on stated percentages. However, we interpret them as but an anti-lapse safety valve (Article VI obviously does not encompass the charitable bequests.)
[7] See Wells v. Menn, 158 Fla. 228, 28 So.2d 881, 884 (1947) wherein our Supreme Court said: "We approve the better rule which provides that when a testator devises 10% of his estate, or any fractional part thereof, to a named beneficiary it has reference to 10% of the net or distributable part of the estate."
[8] Note however, this case involved a contest between pre-residual and residual legatees, not charitable versus non-charitable beneficiaries.