# IANDOLI, LEWIS E. ESTATE OF, IN RE:

Case No. 82-0699

Seventeenth Judicial Circuit, Broward County

April 1, 1985

## APPEARANCES OF COUNSEL

**John W. Douglass** and **Cecil T. Farrington** for personal representative, Angelina Iandoli.

**Carl Hoffman, Hoffman and Hertzig,** for respondent, Marie Iandoli.

## OPINION OF THE COURT

### FINAL ORDER OF APPORTIONMENT

RAYMOND J. HARE, Circuit Judge.

This cause came on to be heard after due notice upon the Personal Representative's petition for order of apportionment of estate taxes filed in accordance with the requirements of Florida Probate Code Section 733.817(5) Florida Statutes. After taking testimony, examining the record and files of this proceeding, and considering the authorities submitted by and the arguments of counsel, the Court finds as follows:

1. Lewis E. Iandoli died a resident of Broward County, Florida on February 3, 1982. His Last Will and Testament dated November 10, 1970 was admitted to probate on February 17, 1982. Letters of Administration were then issued to the decedent's widow, Angelina Iandoli, which remain outstanding on this date.

2. On November 2, 1982, a United States estate tax return, Form 706 was filed. $828,151.47 tax was paid to the United States Internal Revenue Service and $194,233.21 was paid to the Florida Department of Revenue. An election to extend the date for payment of $283,000.00 additional tax was made under Section 6166 of the Internal Revenue Code. As a result of an audit, additional tax plus interest in the total amount of $103,786.38 was paid to the Internal Revenue Service, and additional tax plus interest was paid to the Department of Revenue in the total amount of $20,363.17 on July 14, 1983. On August 29, 1983, the District Director of Internal Revenue issued an estate tax closing letter and the Florida Department of Revenue issued its Final Certificate for Inheritance and estate tax on September 2, 1983. These calculations of the tax as thus, approved by the Internal Revenue Service are based upon the allowance of the Federal estate tax marital deduction for all interests passing to the decedent's widow, Angelina Iandoli, without charge thereto of any portion of Federal or Florida estate tax.

3. The decedent's Last Will and Testament reads as follows:

### LAST WILL AND TESTAMENT OF LEWIS E. IANDOLI

I, LEWIS E. IANDOLI, residing in the State of Florida, being of sound and disposing mind, do hereby make, publish and declare this to be my Last Will and Testament, hereby revoking any and all Wills, Testaments and Codicils by me at any time heretofore made.

*FIRST*: I direct that all my just debts and funeral expenses be paid as soon after my death as may be practicable.

*SECOND*: I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal, and mixed, of any kind and nature and wheresoever the same may be situated, of which I may die seized or possessed, or in which I may be or become in any manner entitled to have any interest, including any property over which I may have any power of appointment, as follows:

A. One-half (½) thereof to my wife, ANGELINA IANDOLI, if she survives me, and if she does not survive me or dies as a result of a common accident or disaster with me, to my stepson, Thomas

**163**

Domenici, if he survives me, and if he does not survive me, to my daughter, Marie Iandoli, if she survives me.

B. One-half (½) thereof to my daughter, Marie Iandoli, if she survives me, and if she does not survive me, to my wife, Angelina Iandoli, if she survives me.

*THIRD*: I nominate, constitute and appoint my wife, ANGELINA IANDOLI, to be the Executrix of this, my Last Will and Testament. In the event my said wife shall fail to qualify, die, resign or cease to act as Executrix for any reason, then I nominate, constitute and appoint DR. MARK KUHN, of Ft. Lauderdale, Florida, as alternate Executor to act in her place and stead.

*FOURTH*: I hereby direct that no bond or other security shall be required of my said Executors in any jurisdiction in respect to their performance of their duties.

*FIFTH*: I give my said Executors the fullest power and authority in all matters and questions to do all acts which I might or could do if living, including, without limitation, complete power and authority to sell (at public or private sale, for cash or credit, with or without security), mortgage, lease and dispose of and distribute in kind, all property, real and personal, at such times and upon such terms and conditions as they may deem advisable.

IN WITNESS WHEREOF, etc.

4. The Florida Estate Tax Apportionment Act, Section 733.817 Florida Statutes (1981) provides that all Federal and State estate taxes shall be equitably apportioned as provided in the Act "except as otherwise directed by the Will". Under the Statute, the tax is charged to and paid from the interest which generates the tax unless otherwise directed by the Will. If an interest passing under the Will is tax deductible, no tax is charged to or paid from that interest unless the Will directs otherwise.

5. The Iandoli Will devises one-half of the estate to the testator's daughter, Marie Iandoli and the other half to his widow, Angelina Iandoli. The share passing to the widow is estate tax deductible. Under the terms of the Apportionment Act the one-half of the estate passing to the widow is not diminished by a charge for a payment of estate tax, unless the Will directs otherwise.

6. The Iandoli Will makes no reference to estate taxes or the Apportionment Act and contains no express direction rendering the Apportionment Act inapplicable. Nevertheless, Marie Iandoli, the decedent's daughter, who has objected to the granting of the Personal

Representative's Petition for Apportionment, takes the position that the Will implicitly directs against Apportionment. The Court finds that the Will makes no such implicit or explicit direction, and that the Apportionment Act controls the payment of all estate taxes here under consideration.

7. The leading Florida decision in point, relied upon by both the Personal Representative and the daughter, is *In re Estate of Collin*, 368 So.2d 1350 (Fla. 4th DCA 1979). The *Collin* case holds that the Apportionment Act is applicable to all estates unless the Will contains a "clear and otherwise unambiguous direction" to the contrary. *Ibid*, p. 1355. A divided *Collin* court determined, however, that such a clear and unambiguous rejection of Apportionment could be gathered from a reading of the Will as a whole even if the testator had failed expressly to so direct. In a decision specifically limited to the circumstances of that case, the *Collin* court found that the Will under consideration did in fact contain such a clear direction against Apportionment. The circumstances under consideration in *Collin* and those now before the Court are quite different. The *Collin* reasoning applied to the facts of this case dictates the opposite result from the outcome of the *Collin* case.

8. Paragraph II of the *Collin* Will contained a clause directing that the decedent's "debts, estate taxes and expenses" be paid from his estate; Paragraph V, the residuary clause, left percentage interests to family members and charities. The *Collin* court said (p. 1351, 1352):

> ". . . where the taxes are grouped with debts, expenses and costs of administration and are coupled with a clause directing that the residue to be divided . . . then such direction indicates that the testator intended after-tax equality."

and at page 1354:

> "The above 'grouping' argument would not be enough direction in and of itself, but resort to the residuary clause additionally reveals a detailed disposition of the residue by percentages. . . . We hold that the setting forth of these percentages coupled with the direction in Paragraph II constituted, in sum, an unambiguous direction that all should share equally in the residue, despite the lack of an explicit statement to the executor that the residuary estate be distributed without apportionment".

9. In the present case, the residuary bequests are expressed in similar terms (as, indeed, are substantially all divided residuary bequests), but there is no prior grouping of "taxes" with "debts"; in fact, "taxes" are not mentioned at all. Therefore, one of the two coupled elements found

**165**

necessary in *Collin* to avoid the application of the Apportionment Act
—the prior grouping of taxes with debts—is absent here, and no
necessary implication arises that taxes should be paid "off the top".[1]

10. The daughter attempts to make up for this critical absence by
reliance on the holding of *Wells v. Menn*, 158 Fla. 228, 28 So.2d 881,
884 (1946) wherein the court determined on the peculiar facts of that
case that the phrase "all my just debts" evidenced the purpose of the
testator that all debts, taxes and other charges be paid from the gross
estate. This court finds that *Wells* has no application in an Apportion-
ment situation, because it was decided two years before enactment of
the Florida Apportionment Statute which effectively prescribes that
taxes shall *not* be treated as debts, but rather as therein specifically set
forth. See also *Murphy v. Murphy*, 125 Fla. 855, 170 So. 856, 869
(1936), wherein death taxes were held not to be debts *of the* decedent
since they could not have been collected during decedent's lifetime and
they are not debts of the decedent himself.

11. Nor is the daughter's argument that the decedent must have
meant "taxes" when he said "debts" any more persuasive. It is at least
equally reasonable to conclude that the omission of any reference to
"taxes" in the Iandoli Will amounts to a tacit approval that the tax
burden shall fall where the law provides; it is perhaps even more
reasonable to assume that neither the testator nor the draftsman ever
considered the matter. In any event, all such speculation is unnecessary
since the Apportionment Act and the *Collin* decision require a clear
and unambiguous direction to render the Act inapplicable, and none is
here present.

12. The foregoing conclusion is consistent with the general rule set
forth at Annot., effect of Will on death taxes, 70 ALR 3rd. 630, 647,
Section 6 (1976):

> "With a single exception it has consistently been held that the
> ritualistic and generally meaningless direction to pay all just debts
> does not constitute a direction to pay estate or other death taxes so
> as to change the burden of such taxes, nor does it constitute a
> direction against apportionment."

---

[1] The *Collin* court also considered testimony of the draftsman to the effect that the
Will was supposed to result in after-tax equality, but the opinion makes clear that such
testimony was not an essential element in the decision. The Personal Representative
seeking Apportionment here offered the testimony of the family accountant as to his
discussions with the decedent more than eleven years after the testator signed the Will.
That testimony was objected to by the daughter and the objection was sustained. A
proffer was made but this court has not considered matters contained in the proffer.

166

Accordingly, it is hereby ordered, adjudged and decreed as follows:

(i) All United States and Florida estate taxes, interest and any penalties thereon, imposed against the Estate of Lewis E. Iandoli shall be apportioned as provided in Section 733.817, Florida Statutes.

(ii) All such taxes, interest and penalties were properly charged against the interests in the estate passing to the decedent's daughter, Marie Iandoli. All other distributable assets of the estate passed to the decedent's widow, Angelina Iandoli, qualify for the Federal estate tax marital deduction, and are therefore not "included in the measure of the tax" within the meaning of that phrase as used in Section 733.817, Florida Statutes.

(iii) Consistent with the foregoing, the court specifically defers for future determination all other questions relating to the mechanics and procedures of how distribution shall be accomplished.