HERSEY, Chief Judge.
Lewis E. Iandoli died testate in 1982, leaving one-half of his residuary estate to his wife, Angelina Iandoli (appellee), who was also named personal representative of the estate. The other one-half of the residuary was left to appellant, Marie Iandoli, decedent’s daughter by a previous marriage. The will contained no provision for payment or apportionment of estate taxes.
Federal estate taxes of $1,111,151.00 came due in November 1982, and there was a tax liability to the State of Florida in the amount of $194,233.00. Appellee, as personal representative, deferred payment of $283,000.00 as she was permitted to do under the Internal Revenue Code, and paid the balance of taxes to the respective taxing authorities.
In due course, administration of the estate was concluded and a petition was filed for approval of the scheme of final distribution of estate assets. This scheme generated the present controversy.
Under the proposed plan of distribution the liability for estate taxes was apportioned as of the date taxes were paid, and the relative values of the two shares of the residuary estate were thus established at that time. Appellant objected to this meth *665 od, contending that apportionment should take place at the time of final distribution rather than at the earlier time selected by the personal representative.
Because estate assets had appreciated in value and because of an earlier determination that the burden of estate taxes fell on that portion of the residue passing to the appellant, which determination was affirmed by this court without opinion in Iandoli v. Iandoli, 484 So.2d 26 (Fla. 4th DCA 1986), the timing of the computation fixing the relative shares of the residue had substantial financial impact on the respective recipients. That impact being adverse to appellant, she takes this appeal.
Also placed in issue is the personal representative’s failure to maximize the deferral of payment of estate taxes as permitted by law and regulation. However, the cost to the estate of doing so being patently burdensome, we simply affirm the action of the trial court on this point.
More troublesome is the remaining issue: the timing of and method to be used for the apportionment of the estate’s liability for death taxes.
The literature describes several methods that have been or could be used by the personal representative but no one method presents itself as clearly more appropriate or more equitable than all of the others under all possible circumstances. Neither the legislature nor the courts of Florida have thus far provided a solution to this problem. Thus, we venture into substantially uncharted territory guided only by persuasive authority and analogy.
As indicated, at least seven methods of dealing with computation of the relative shares of a residuary estate have been identified:
1. Gross Share Fixed Fraction;
2. Pre-Tax Fixed Share;
3. Gross Share Changing Fraction Fair Market Value;
4. Pre-Tax Changing Fraction Fair Market Value;
5. Gross Share Changing Fraction Inventory Value;
6. Pre-Tax Share Changing Fraction Inventory Value; and
7. True Residue Method.
Cantrill, Fractional or Percentage Residuary Bequests: Allocation of Postmortem Income, Gain and Unrealized Appreciation, 10 AMERICAN COLLEGE OF PROBATE COUNCIL PROBATE NOTES 322 (1985).
Simply stated, the two opposing propositions presented for our review are these. The personal representative charged appellant’s share of the estate with the payment of estate taxes at the time of payment of those taxes, thus reducing this share to 40% of the residuary and increasing appel-lee’s proportionate share to 60%. Appellant was thereby deprived of the benefit of future appreciation in the assets of the estate by that same ratio. The trial court treated the payment of estate taxes as akin to a distribution to appellant (whose share of the estate was to bear the entire burden of death taxes) and upon that analogy approved the scheme of distribution.
Appellant argues that payment of estate taxes under these circumstances is not akin to a partial distribution because liability for estate taxes falls upon the personal representative and the estate as a whole rather than upon any particular share. Thus, appellant argues, ascertainment of the components of the fractional shares should await final distribution rather than being fixed upon payment of an “estate” obligation; i.e., at the time of payment of the tax.
The Florida cases referenced by the parties, Hagerty v. Hagerty, 60 So.2d 542 (Fla. 1952), and In re Estate of Collin, 368 So.2d 1350 (Fla. 4th DCA 1979), are not helpful on this aspect of our deliberations. The case law from other jurisdictions and the various articles and commentaries discussed in the briefs also do not direct us to a solution of this problem.
Florida’s apportionment statute, section 733.817, Florida Statutes (198Í), despite appellant’s position to the contrary, is not persuasive in either direction on the proper formula to be applied in these cases. Allocation of liability for the tax and its appor *666 tionment among devisees or others receiving a decedent's estate is not determinative of the effect that satisfaction of that liability should have on the respective shares.
Appellant proposes that we adopt and apply here the “True Residue” method of determining her ultimate share of the residuary estate. This approach has the advantage of simplicity from the viewpoint of administering the estate and making computations for distribution. Under the proper circumstances it could produce a result which would be more equitable than some other method.
Appellee utilized and urges the adoption of the “Changing Fraction” method of administration and computation of shares of the residuary estate. Referring to application of this rule by a New York court, one commentator has expressed the view that the New York court in question “rejected a rule of convenience in favor of what may be described as a rule of equity.” R. COVEY, THE MARITAL DEDUCTION AND THE USE OF FORMULA PROVISION 59 (2nd Ed.1978), referring to the case of Matter ofMeerbaum, Surr.Ct. Kings Co., N.Y., N.Y.L.J., September 29, 1961, p. 14, col. 6.
Our review of the authorities leads us to conclude that there is no clear-cut line of authority which compels a uniform approach to computation of shares of the residue in relation to payment of death taxes. The intention of the testator (if that intention may be ascertained from the language of the will), the nature and extent of assets, the relationship of the parties to one another, the equitableness of the final result, and other factors may be considered and should be considered by the personal representative in applying a particular formula to the estate assets at hand. In the absence of legislative fiat, however, we are disinclined to substitute an inflexible standard for the reasonable .and “in good faith” exercise by the personal representative of that judgment for which that person or institution was selected by the testator or by the probate court. Unless the end result is patently wrong or unfair it should not be disturbed by the courts.
By the same token, the lower tribunal is in the best position to measure the fairness and logic embodied in a particular scheme of distribution. In the absence of an abuse of discretion this court will not attempt to second-guess this basically fact-finding exercise.
Finding no such abuse of discretion in this case, we affirm.
DOWNEY and ANSTEAD, JJ., concur.