# FATHER H. VALENTIN AND HAWAIIAN TRUST COMPANY, LIMITED, TRUSTEES UNDER THE WILL AND OF THE ESTATE OF JOHN ENA, DECEASED, v. MARY ENA BRUNETTE, ET AL.

## No. 1370.

CROSS-APPEALS FROM CIRCUIT JUDGE FIRST CIRCUIT.
HON. J. T. DeBOLT, JUDGE.

ARGUED MAY 4, 1922.                    DECIDED JUNE 16, 1922.

EDINGS AND PERRY, JJ., AND CIRCUIT JUDGE BANKS
IN PLACE OF PETERS, C. J., DISQUALIFIED.

DOWER.

Where the real estate is mortgaged to raise the amount of the widow's dower allotted to her in gross, the principal and interest should be paid out of the income of the estate and not out of the corpus, the will providing that the income should go to certain life-tenants and the corpus of the estate to the remaindermen.

TRUSTS—street improvements—apportionment between life-tenants and remaindermen.

Improvements of a lasting or permanent nature, which will endure longer than the life expectancy of the life-tenant, should be paid for out of the corpus of the estate, while those of temporary nature should be paid for out of the income.

OPINION OF THE COURT BY EDINGS, J.

These are cross-appeals by the life-tenants and remaindermen under the will of John Ena, deceased, from a decree in equity. The salient features of the case are as follows:

On or about the 7th day of May, 1921, Father H. Valentin and the Hawaiian Trust Company, Limited, trustees under the will and of the estate of John Ena, deceased, filed in the circuit court of the first circuit of

this Territory a bill in equity requesting the instructions of the court in reference to their duties as such trustees. This bill was subsequently amended in minor particulars to conform to the evidence. The will of John Ena, deceased, was duly admitted to probate January 21, 1907. By his said will the testator in substance conveyed all of his property to the petitioners in trust as follows: "After the payment of my debts and funeral expenses and the legacies below named, to invest such cash from my estate as may come into their hands in some safe investment, and to pay the income of all funds so invested by them and the income from all of my estate both real and personal in equal shares to my wife and to each of my children, namely: Mabel K. Ena, Mary K. Ena, Clarissa K. Ena, Daisey M. Ena, Thomas F. Ena, Anna D. Ena and John Ena, Junior, during the terms of their natural lives; and upon the decease of my wife or any of my children, to pay the share of said income of such beneficiary to her or his issue surviving her or him; and in default of surviving issue, or upon the subsequent death of such issue, to pay the share of the income of such deceased beneficiary to the survivor or survivors in equal shares; the issue of a deceased beneficiary taking the parent's share by right of representation; and upon the death of the last survivor of my said children to divide my estate amongst the children or descendants of my children then living; each of such grandchildren or descendants to take by representation the share that their parent would have been entitled to had I died intestate; and also to pay to my wife during the term of her life, in addition to her share in said income, (said share being one-eighth unless increased by the decease of any of said beneficiaries or by the forfeiture of a share in manner below set forth) the further sum of Nine Hundred ($900.00) Dollars per annum, and to allow her to occupy

the homestead on Pacific Heights during her life in con-
sideration of her acting as guardian of my minor chil-
dren as below provided, and in further consideration of
her release of all claim of dower or distributive share in
my estate; and I declare that it is my wish that the pro-
vision above made for the benefit of my wife shall be
accepted by her in full of dower and distributive share
provided by statute.    I further direct that the amounts
given to my wife and to my daughters shall be to their
sole and separate use, free from the control of any hus-
band of any of them, and without power of disposition
or anticipation by either of them prior to the actual re-
ceipt of the same; and that my trustees shall pay them
said amounts on their individual receipts.    I grant unto
my said trustees and their successors full power to sell,
with the consent of my wife and such of my children as
may be of age at the time of sale, without application to
or leave of court, any of my real or personal estate and
to invest and reinvest the same in such manner as they
may think for the best interests of my estate; purchasers
to take free of all trust."

Subsequent to the death of the testator and to the
admission of his will to probate the widow declined to
accept the provisions of the will in her behalf and elected
to take dower under the statute.    Thereafter proceedings
were instituted for the admeasurement of her dower, on
which proceedings a final decree was entered reciting that
the realty in question was of the value of $155,491; that
the dower interest "cannot be set apart to the widow by
metes and bounds for her lifetime without great injury to
the owners" and that the "present value in gross of said
dower interest is the sum of $37,919.31," and awarding
her the sum of $37,919.31 in gross as and for her dower
interest in her husband's real estate, the said amount to
be paid by the sum of $31,919.31 in cash and the balance,

$6000, by a conveyance to her of certain real property situate on Miller street in Honolulu, and appraised at $6000. The trustees were authorized and empowered to mortgage the real estate belonging to the trust for the sum of $29,000 for the purpose of obtaining the cash to be paid to the widow. This mortgage was duly executed and covered five tracts of land, described by metes and bounds, and certain interests in streets and lanes therein described.

On the 4th day of September, 1912, the widow received from the trustees the sum of $29,000, money received by them from the mortgage; the sum of $2919.31, cash on hand paid her from the principal of the trust estate, and also a conveyance in fee simple of the Miller street property, valued at $6000. This mortgage was wholly discharged on the 30th day of July, 1920, by the trustees, the principal sum of $29,000 being paid out of the corpus of the estate and the interest on the mortgage, amounting to $13,457.73, being paid from the income of the said trust estate.

The provision made by the statute for a widow is that she "shall be endowed of one-third part of all the lands owned by her husband at any time during marriage, in fee simple, in freehold, or for the term of fifty years or more, so long as twenty-five years of the term remain unexpired," and that "she shall also be entitled, by way of dower, to an absolute property in the one-third part of all his movable effects, in possession, or reducible to possession, at the time of his death, after the payment of all his just debts." R. L. 1915, Sec. 2977.

With the nature of the widow's interest in personalty we are not here concerned for the undisputed evidence is that this widow in due course received from the trustees under the will of her deceased husband her share in the personal property. In this case, and also in Equity Case

No. 1798, in which some of the history pertinent to this case was evolved, the questions which arise have reference merely to the widow's interest in the realty.   There can be no doubt that in this jurisidction the statutory interest by way of dower secured to the widow is an interest *for and during the remainder of her life only,* in one-third of the property mentioned. 10 A. & E. Enc. L. 125, 127, 252; 19 C. J. 457, 544; *Nashville Lumber Co.* v. *Barefield,* 124 S. W. (Ark.) 758, 760; *Reynolds* v. *Barnard,* 2 Haw. 72, 77.   A widow purely as dowress has no fee simple title to any of the lands of her husband.   When she elects to take under the statute instead of under the will the interest which she so takes is a life interest only.   Immediately after the making of her election, by the filing in the probate court of a proper notice or certificate of that fact, that was the estate which the widow had in one-third of the land of the testator.

From the record in the proceedings (Equity No. 1798) it clearly appears that the amount awarded ($37,919.31) was by the court found to be the then present worth, according to well-known mathematical tables, of the annuity which would be received by the widow during the remainder of her life (taking her expectancy of life from recognized dower tables), consisting of eight per cent. interest (our statutory rate) upon one-third of $155,491, the value of the realty.   In other words the court of equity proceeded upon the view, and correctly, that the widow's was a *life* interest only in one-third of the realty and converted it into its then present worth in terms of money.

No provision was made in the decree, and none was asked for by the parties then before the court, as to how the actual cost of wiping out the widow's dower interest at that time was to be ultimately paid, that is to say, as to who was to ultimately bear that expenditure.   Neither

the life-tenants nor the remaindermen were made parties in that suit and none of them appeared. The only parties to the suit were the trustees on the one hand and the widow on the other. The only substantial issue then before the court was as to ridding the estate as a whole of the dower incumbrance and there was no issue at that time as to any apportionment of the cost between various classes of beneficiaries under the will. This latter is the question now before this court for determination.

The case is at first thought susceptible of confusion as to what the fundamental situation was which the decree asked for in the present suit is to replace. Some at least of the argument presented to us would seem to have been based upon the theory that the mortgage is the correct starting point and that the existence of the mortgage and the payments of interest and principal thereunder are what is to be supplanted or provided for by the decree now sought. The mortgage, however, was a mere temporary expedient for the raising of the funds necessary to carry out the award in favor of the widow and the fact that it was placed upon the corpus of the estate and that its interest was paid out of the income of the estate should not be permitted to alter the preexisting rights of the parties. It is true that as a general rule when there is an existing mortgage on the property left by a decedent and by the will the income is left to life-tenants and the principal to remaindermen, the principal of the mortgage must be paid by the remaindermen and the interest by the life-tenants. 16 Cyc. 634, 635; 21 C. J. 958, Sec. 94; 17 R. C. L. 639, 640, Sec. 29; *Fosdick* v. *Lyons,* 56 N. Y. S. 942, 943; *Upton* v. *Merriman,* 116 Minn. 358, 365; *Ivory* v. *Klein,* 54 N. J. Eq. 379, 382. This is so because in this way the evident intent of the testator is carried out. In such a case the corpus which is devised is in reality,

not the principal as it would be if it were unincumbered, but the principal minus the incumbrance. But these are not the circumstances of the case at bar. The property came from the testator to his trustees free from any mortgage or other incumbrance. It came with the express direction to the trustees to pay the income to certain persons as life-tenants and to hold the principal for certain persons as remaindermen.

As contended by the life-tenants, when a widow declines to accept under the will and elects to take statutory dower her election should not be permitted to disturb the testator's directions any further than is absolutely essential. The will, in other words, must be carried out as nearly as possible. In the present instance no real difficulty arises out of this consideration. The testator provided with clearness that he wished the income of his estate to go to the life-tenants and he provided with equal clearness that he wished the corpus of the estate—all of the corpus—to be preserved for, and to go to, the remaindermen. The life-tenants contend that "the chief aim and purpose of the testator was the welfare of his own children rather than that of their descendants;" but in his will he has clearly expressed his own measure of his affections and solicitude for the two classes of descendants and that is by giving all of the corpus to the remaindermen and the net income only to the life-tenants. The provision for the remaindermen is as clear as is the other.

Just prior to the rendition of the decree in Equity No. 1798, upon whom was the burden consisting of the widow's right to dower in the realty? Undoubtedly upon the life-tenants alone. She had a right to elect to take statutory dower and she did so elect. But she did not by that election acquire any part of the corpus of the estate. She thereby acquired merely the right to the use or the

income *for life* of one-third of the realty. If no steps had been taken to alter the form of her rights—if, in other words, no judicial proceedings by way of assignment or admeasurement of dower had been had—the widow would have simply taken the use of the income of one-third (undivided) of the realty and upon her death that one-third of the realty would revert unincumbered, the fee to the remaindermen and the income thereof to the life-tenants. If, to take a second step, instead of merely enjoying the use of the income of one-third of the realty, unassigned, the court had set apart to her in kind one-third of the realty she would likewise have been entitled to the enjoyment of the use or the income of that separate one-third but would have been obliged to leave that one-third intact upon her death, the fee for the remaindermen and the income thereof for the life-tenants. Taking now a third step: If, instead of having the use or the income of one-third, unassigned, or of having the use or the income of one-third set apart in kind, the court ascertains and decrees in her behalf the present worth of her dower interest, the decree should in justice and equity provide that the amount awarded should be paid by the life-tenants, so as to leave the burden of the dower interest where it was before. When the issue arises purely between the widow on the one hand and the owner of the fee (not split up into various interests) on the other hand no difficulty arises. The owner of the fee in such a case can do his own bookkeeping and charge the cost of the purchase of the dower interest either to his capital account or to his income account, precisely as he pleases. But when, as in the case at bar, there are life-tenants and remaindermen it becomes necessary to analyze the preexisting situation and the rights of the parties in order that they may not be relatively altered or disturbed by an act of the court.

The express statutory direction (R. L. 1915, Sec. 2272) is that when the dower in real estate cannot be set apart without great injury to the owners the judge may ascertain the value of such dower in money and order the same to be paid "on such terms as shall be just and reasonable." What is just and reasonable depends of course upon the circumstances of each particular case. What may be just and reasonable as between a widow on the one hand and the owner of the whole fee on the other hand may be one thing; and what is just and reasonable between the widow on the one hand and a set of divided interests on the other hand may well be another thing. The evidence shows that in this case the widow's expectancy of life in 1912, the date of the decree admeasuring her dower, was 20.91 years while the average expectancy of the testator's children (life-tenants) was 36.71 years. It certainly would not be just and reasonable in view of the prior history of this estate, of the provisions of the will, of the election of the widow, of the comparative expectancies of life involved, and of the ascertainment of the present worth of the widow's interest, to require the remaindermen, who were not originally in any wise burdened by the widow's right of dower, to be now burdened with the whole or a part of the cost of the extinguishment of that right. This applies with equal force to the interest paid under the mortgage.

Whether the court in Equity Case No. 1798 had the power to order a sale or conveyance of the land in order to pay out of the proceeds thereof the amount awarded to the widow or had the power to authorize the trustees to place a mortgage upon the principal of the estate for the same purpose need not be considered, for the mortgage has been long since paid and discharged and the realty mortgaged is still intact and available for the remaindermen, the $6000 represented by the conveyance of the Mil-

ler street lot can be in this suit ordered reimbursed by the life-tenants and the surrounding circumstances of the case are such that, with relation to the prospective lives of the life-tenants and the actual and respective income receivable by them from the estate, complete equity and justice can still be done to all of the parties. Moreover, in Equity Case No. 1798 the court did not decree who should bear the burden of the award in favor of the widow but left that question wholly open for future determination. The income which the widow would have received purely in consequence of her election under the statute would certainly have come out of the income which under the will was given to the life-tenants. None of the moneys so receivable by her were to be paid by the remaindermen out of the corpus of the estate. That set of circumstances should be perpetuated in effect by the decree in this case and it can only be perpetuated by requiring the trustees to charge to the life-tenants alone not only the principal of the mortgage but also the interest paid thereunder. No part of the corpus of the estate should be applied to extinguish that which was originally a burden on the life estate only. *DeWitt* v. *Fugate,* 139 S. W. (Ky.) 788. The true test is, to whom did the benefit of the extinction of the dower inure? *State* v. *Schwartz,* 81 Wash. 293, 301. The same is true as to the $6000, being principal paid to the widow, as a part of the award in her favor, in the form of the Miller street lot. Reimbursement for that also should be made by the life-tenants to the remaindermen.

If at the time of the filing of the bill and of the rendition of the decree in Equity No. 1798 there had been in the hands of the trustees accumulated income (ordinarily payable, of course, to the life-tenants) more than sufficient to meet the amount of the award in favor of the

widow, the considerations and issues involved would have been less confusing and elusive.

It does not follow that these charges should now be made against the life-tenants in such a way as to deprive them of all of their income from the estate pending complete payment of the amounts heretofore erroneously charged. It is possible, and the remaindermen have in open court consented to the taking of this course, for the trustees to charge the life-tenants, at each annual or other customary distribution period, with such a portion of the amount to be ultimately made up as will under all of the circumstances be reasonable and at the same time serve the purpose desired of reimbursing and protecting the remaindermen.

The sum of $5441.89 was assessed by the government against certain property of the trust estate situate at Kalia, Waikiki, for street improvements made at Kalia by the City and County of Honolulu, of which sum $1632.57, or three of the annual instalments, have been paid from the corpus of the trust estate and interest on this assessment, amounting at the date of this petition to $555.07, has been paid from the income of the trust estate.

There was also assessed the sum of $7791.64 by the City and County of Honolulu for street improvements against certain of the real property of the trust estate at Iwilei. This assessment has been paid from the corpus of the estate and the interest thereon, amounting to $731.49, has been paid from the income of the estate.

Neither party attacks the decree appealed from in so far as it relates to the apportionment of the street improvements as between the life-tenants and the remaindermen with reference to improvements on the one hand that were temporary in their nature and to improvements on the other hand which would outlast the lives of the

life-tenants. It is claimed, however, on behalf of the life-tenants that the whole of the assessment against Lot 62 at Iwilei should be borne by the remaindermen because that piece of land was nonproductive and authorities are cited by them to the effect that the taxes on nonproductive property of the estate of a decedent are to be paid by the remaindermen and not by the life-tenants.

The general rule is well established that where under a will the testator directs the income to be paid to certain tenants for life and the principal to be reserved for remaindermen the taxes on all of the property, whether productive or non-productive, are to be borne by the life-tenants unless the will provides to the contrary. *In re Albertson,* 113 N. Y. 434, 439; *Peck* v. *Kinney,* 143 Fed. 76, 80; *Guthrie* v. *Wheeler,* 51 Conn. 207, 212; 2 Perry on Trusts (6th ed.), Sec. 554; *In re Morton,* 74 N. J. Eq. 797, 801; *Clark* v. *Middlesworth,* 82 Ind. 240; *Martin* v. *Kimball,* 96 Atl. (N. J.) 565. This is simply another way of saying that when the testator leaves the income of his property to life-tenants he means the net income and also means that the principal shall be preserved intact for the remaindermen. In the case of *Montgomery,* 165 N. Y. S. 1069, 1070, cited by the life-tenants, the court found that the intention of the testator as expressed in the will required payment of the taxes under the circumstances out of principal. So also *In re Estate of Vermilye,* 166 N. Y. S. 320, cited by the life-tenants, the court interpreted the will there under consideration as showing that the intention of the testator was that certain interest on mortgages and other expenses should be paid out of the principal. In *Hite* v. *Hite,* 19 L. R. A. (Ky.) 173, cited by the same appellants, the court said that "the intention of the testator must govern" and found from the provisions of that particular will an intention that the taxes on unproductive property should be borne by the re-

maindermen.   In the will of John Ena no reason is to be found for construing it to mean anything other than this—that the life-tenants were to receive the net income after paying all taxes, interest and other proper charges of maintenance.   The testator made no distinction in the will between the productive and the nonproductive property.   He created a consolidated trust fund out of all of his property, real and personal, without distinction as to productive and nonproductive property.   He gave power to the trustees to sell with the consent of the widow and the children of age.   He devised this consolidated property to the trustees for the payment of its joint income to one set of beneficiaries for life and for the preservation of the principal for another set of beneficiaries.

There is a limitation to the above general rule to the effect that where the income from the productive property is not sufficient in whole or in part to pay the taxes of the nonproductive property such excess of taxes need not be borne by the life-tenants out of their own separate property not derived under the will; and there is reason in support of that limitation.   Those facts, however, do not exist in the case at bar.   The income from the testator's property, regarded as a whole, is more than sufficient to pay for the taxes and other expenses of the whole and to still leave net income for the life-tenants.

It may be added that concurrently with, or immediately after, the payment of the special assessment for improvement taxes on the land in question (Lot No. 62) the land so assessed was converted into cash by sale at a highly advantageous figure.   That very sale took the property out of the nonproductive class and rendered it productive, of interest.   For this additional reason the argument of the life-tenants cannot apply.

It is further contended on behalf of the life-tenants that the payment in one sum concurrently with the mak-

ing of the sale of Lot 62 of the whole of the improvement tax assessed against that parcel of land and the consequent sale of the lot free from tax increased the price of the lot by the amount of the tax and that therefore to charge the amount of the tax to the life-tenants is the equivalent of taking that much money from the life-tenants and giving it to the remaindermen. The answer to this is that the improvements under discussion were temporary, not lasting as long as the life-tenants (the strictly permanent improvements are by the decree charged to the remaindermen and the charge concerning them is not attacked by the life-tenants and is not involved in this contention) ; therefore *prima facie* the life-tenants should pay for them as the benefit in increased rental value would inure to the life-tenants only. Instead of increased rentals, the life-tenants (now that the land has been sold) will receive increased interest on the investment. The presumption must be that the purchaser in figuring his purchase price took into consideration (a) the permanency of the improvements paid for by the remainder men and (b) the impermanency of the improvements paid for by the life-tenants. To what extent as compared with each other the permanent and the nonpermanent improvements tended to add to the sale price there is no definite method of ascertaining. The evidence does not show what effect, if any, the payment of the assessment had upon the sale price. The life-tenants will receive for the rest of their lives the benefit of the entire added income-producing capacity of the property or its proceeds and therefore should equitably pay the interest on the cost of the improvements. We know of no closer approach to fairness than to require, as did the circuit judge, that the remaindermen pay for the principal of the permanent improvements and that the life-tenants pay for the principal of

the impermanent improvements and the interest on the entire cost of the improvements.

The objection to the amendment of the original bill of complaint in this present suit cannot be sustained.  The original bill prays for instructions as to (a) whether the whole of the sum paid by the trustees on the principal of the mortgage should be paid out of the principal or out of the income or should be apportioned between principal and income; (b) whether, if it should be held that the principal of the mortgage should be paid out of the principal of the trust fund, the life beneficiaries should reimburse the remaindermen; (c) whether the interest paid on the mortgage should come out of the principal or out of the income of the trust estate; (d) whether the interest on the improvement taxes should be paid out of the principal or out of the income of the trust estate; and (e) whether the principal of the improvement taxes should be paid out of the principal or out of the income of the trust estate.  In the amended bill the prayers under (a) and (b) relate to the principal of the award instead of to the principal of the mortgage and the prayers under (c), (d) and (e) remained the same.  In some slight respects the allegations of the bill, too, were amended so as to make them conform to the proof which had been adduced at the trial.  The bill was properly amendable in the respects just mentioned.  The general scope and nature of the bill was in no wise changed by the amendment.  The cause of action, if such it may be called, remained the same.  The original was a bill for instructions and so was the amended bill.  The additional instructions requested in the amended bill were such as might properly have been asked for in the original bill.  They were upon questions of importance, involving as much doubt as did the questions set forth in the original bill.  The mere fact that the trustees had already acted to the extent of

providing in some way for the payment of the mortgage does not disable them from now seeking instructions. Their entries in the books showing the charges which they have made to date and against whom they were made are susceptible of correction at any time when it appears to the trustees, by judicial decree or otherwise, that they ought to be corrected. The court can by its decree reach any erroneous charges which they may have made,—certainly at the suit of any interested party and likewise at the suit of the trustees themselves. It was in furtherance of justice and in consonance with the established practice of our courts that the amendment should be allowed, in order that a final adjudication might be had upon all of these related issues.

The decree appealed from, in so far as it relates to the expenditures for street improvements and the interest thereon, should be sustained; but on the subject of the sum paid to the widow for the extinguishment of her dower right the cause should be remanded for further proceedings not inconsistent with the views of this court.

*Frear, Prosser, Anderson & Marx* filed a brief for the petitioners.

*A. G. Smith (Peters & Smith* and *Smith & Wild* on the briefs) for the guardian ad litem and remaindermen.

*Marguerite K. Ashford (W. B. Lymer* with her on the brief) for the life-tenants.