In the Matter of the Estate of SHUNJI KAY IKUTA, also known as Shunji K. Ikuta, also known as Shunji Ikuta, Deceased

NO. 6175

P. NO. 34080

DECEMBER 30, 1981

RICHARDSON, C.J., OGATA, LUM AND NAKAMURA, JJ., AND CIRCUIT JUDGE FONG IN PLACE OF MENOR, J., EXCUSED

## OPINION OF THE COURT BY RICHARDSON, C.J.

A petition for ancillary probate of the estate of Shunji K. Ikuta was presented to the circuit court of the first circuit in 1970. This appeal and cross appeal were brought upon the subsequent order of the probate judge approving accounts, determining trust, distributing the estate and discharging the ancillary executor.

On appeal, Shunji Ikuta's first wife and their three sons contest the following conclusions of the lower court:

I. Hawaii real property was properly includable in the inventory of decedent's estate;

II. Having considered the record, memoranda, and arguments of counsel for the respective parties, reformation of decedent's testamentary trust was required by changing the word "oldst" [*sic*] to "youngest"; and

III. This is not a proper case for the application of the doctrine of acceleration.

On cross appeal, Shunji Ikuta's second wife and their son contest the following conclusions:

IV. The positions taken by Shunji Ikuta's first three sons were not acts which contested or attacked the Will or any of its provisions so as to cause a forfeiture of their interests and rights as provided in decedent's will; and

V. The court is empowered to appoint additional trustees and therefore Mary T. Ikuta and Bishop Trust Co., Ltd. are appointed co-trustees of the trust created by decedent's will.

We affirm the lower court on all issues for the following reasons.

### I.

Soon after their marriage, Shunji Ikuta and his first wife, Chiyoko, obtained real property in Wailupe through a deed dated December 29, 1936. The deed provided in part as follows:

TO HAVE AND TO HOLD the granted premises, with all the privileges and appurtenances thereto belonging to the said Shunji Kay Ikuta (k) and Chiyoko Lucille Ikuta (w), husband and wife as aforesaid, as tenants by the entirety, *per tout et non per my,* (and not as tenants in common nor as joint tenants) and to the

survivor of the two, in fee simple, absolute and forever.
This deed was recorded at the Bureau of Conveyances, Honolulu, Hawaii.

Due to domestic difficulties, Shunji and Chiyoko Ikuta entered into a property management agreement which they executed on October 12, 1948. The agreement stated in pertinent part as follows:

WHEREAS, the First [Shunji] and Second [Chiyoko] Parties have joint tenancy property located at Wailupe, Oahu, Territory of Hawaii. . . .

Their marital problems increased and, on December 14, 1950, Judge Curtis of the California Superior Court issued an interlocutory decree of divorce, which was finalized on July 22, 1953. The Interlocutory Judgment of Divorce provided as follows with respect to the Wailupe parcel:

That the following described property [situate at Wailupe] was prior to the 12th day of October, 1948, and has been at all times since and still is the separate property of plaintiff and defendant, Dr. Shunji K. Ikuta, and held by them as joint tenants[.]

There is no other documentary reference to the nature of the tenancy of the Wailupe property as between Shunji and Chiyoko. In June of 1969 Shunji Ikuta executed his last will and testament. He died in Honolulu, Hawaii the next month. His will was admitted to probate in California later that year and to ancillary probate in Hawaii in 1970. With regard to the Wailupe property, the Hawaii probate court determined that:

[U]p to the divorce of decedent and Chiyoko Ikuta on December 14, 1950, the Wailupe property was held and owned by them as tenants by the entirety, and upon their divorce, decedent and Chiyoko Ikuta, by operation of law, became each a one-half owner as tenants in common of the Wailupe property, with the result that one-half of said Wailupe property was includable in the inventory of the estate of the decedent.

Order on Motion for Instructions filed December 26, 1972.

Appellants, Shunji Ikuta's first wife Chiyoko and their three sons, contend that the California divorce court found Shunji and Chiyoko to be joint tenants with right of survivorship of the Wailupe property before and after their divorce, so that Shunji's death caused the title to vest in Chiyoko. Appellees, Shunji Ikuta's second

wife Mary and their son, argue that the Hawaii probate court was correct in finding that the property was held as tenants by the entirety up until the divorce and as tenants in common afterwards, which thereby transferred one-half interest in the Wailupe property to Shunji Ikuta's testamentary trust. The resolution of this issue ultimately depends upon our interpretation of the documents involved in light of the applicable law.

Our first task is to decide whether the California court had jurisdiction to determine tenancy of real property in Hawaii. In a suit to enforce a foreign judgment, the jurisdiction of the court which rendered it is open to judicial inquiry, *Adam v. Saenger*, 303 U.S. 59 (1938), and where the question of law or fact necessary to establish jurisdiction was not litigated in the original suit, it is a matter to be adjudicated in a subsequent suit upon the judgment. *Id.*

It is the general rule in California that a court has no jurisdiction to assign separate property of one spouse to the other, *Fox v. Fox*, 18 Cal.2d 645, 117 P.2d 325 (1941); *Mitchell v. Marklund*, 238 Cal. App.2d 398, 47 Cal. Rptr. 756 (Dist. Ct. App. 1965); *Citizens National Trust & Savings Bank v. Hawkins*, 87 Cal. App.2d 535, 197 P.2d 385 (Dist. Ct. App. 1948); and when it does, that part of its decision is not res judicata nor binding on other courts. *Mitchell, supra; Sonnicksen v. Sonnicksen*, 45 Cal. App.2d 46, 113 P.2d 495 (Dist. Ct. App. 1941). There was no express authority for the California court to dispose of either spouse's separate property in this case. At the time of the Ikuta divorce, the relevant California statute referred only to the assignment of community property and homesteads in connection with divorce decrees. Cal. Civ. Code § 137 (1949); *id.* § 146 (Supp. 1953) (current version at Cal. Civ. Code § 4800 (West Supp. 1981)). In *Green v. Green*, 100 F.2d 241, 243 (9th Cir. 1938), *cert. denied*, 306 U.S. 651 (1939), the Ninth Circuit stated that "[w]ith regard to any property not community, the limit of the court's power is to decide that it is excluded from the community, and hence cannot be distributed by it." Outside of determining community status, the California court did not have jurisdiction over the noncommunity property,[1] and a "judgment is entitled to no further effect in another

---

[1] Comment, *Divorce Agreements in California*, 2 U.C.L.A. L. Rev. 233, 234 (1954-1955). *See also* Pierrakos v. Pierrakos, 148 N.J. Super. 574, 372 A.2d 1331 (1977). *But cf.* Porter v. Superior Ct., 73 Cal. App.3d 793, 141 Cal. Rptr. 59 (Dist. Ct. App.

state than it has in that jurisdiction." *Pierrakos v. Pierrakos, supra* n.1, 148 N.J. Super. at 579, 372 A.2d at 1333. Hence we must look to Hawaii law to determine the tenancy of the Wailupe property after the Ikutas' divorce.[2]

The law is well settled in this jurisdiction that if real property which is held as tenants by the entirety is not otherwise provided for, an absolute divorce will convert title into a tenancy in common. *Chock v. Chock,* 39 Haw. 657 (1953); *see Madden v. Madden,* 44 Haw. 442, 355 P.2d 33 (1960). Appellants allege that the 1948 property management agreement altered the tenancy by the entirety to joint tenancy with right of survivorship.

HRS § 509-2 (1976) provides as follows:

Land . . . may be conveyed by . . . tenants by the entirety to themselves . . . as joint tenants . . . without the necessity of conveying through a third party, and each such instrument shall be construed as validly creating a joint tenancy . . . *if the tenor of the instrument manifestly indicates such intention.* (Emphasis added.)

The purpose of § 509-2 and its relevant antecedent, RLH § 12781

1977), holding that the parties could try the issue of validity of a joint tenancy deed of separate property in their marital dissolution action if they both agreed to do so. *Porter* is distinguishable from the case at bar because it was based in part on the general jurisdiction a California court has over California real property and because the relevant statute had been substantially amended.

[2] If the jurisdictional issue had been actively litigated in California and California had proper jurisdiction (*i.e.,* the Wailupe property had been community property), then the California decree would be binding as to the litigating parties. *Cf.* Durfee v. Duke, 375 U.S. 106 (1963) (full faith and credit requires the application of res judicata and collateral estoppel principles in a quiet title action where factual issue of jurisdiction was explicitly addressed, fully litigated and judically determined); Argent v. Argent, 396 F.2d 695 (D.C. Cir. 1968) (in divorce actions District of Columbia courts are authorized to require execution of conveyance instruments for marital realty in Maryland); Smith v. Smith, 56 Haw. 295, 535 P.2d 1109 (1975) (full faith and credit clause not applicable); Rozan v. Rozan, 129 N.W.2d 694 (N.D. 1964) (by an in personam decree, California divorce court with proper jurisdiction has power to compel conveyance of community property located in North Dakota).

*Smith, supra,* involved a California divorce in which the California court specifically declined to assume jurisdiction over Hawaii real property. Because the California court lacked jurisdiction in the present case, the effect of the divorce decree over the property in question is the same as the *Smith* divorce decree.

Recent legislation now directs California courts in divorce proceedings to maintain, insofar as possible, the manner in which record title to community and quasi-community real property located in another state is held. Cal. Civ. Code § 4800.5 (West Supp. 1981); *In re* Marriage of Fink, 25 Cal.3d 877, 603 P.2d 881, 160 Cal. Rptr. 516 (1980).

(1945), is to eliminate the common-law requisite of a "straw man" in creating a joint tenancy. *In re Estate of Au*, 59 Haw. 474, 583 P.2d 966 (1978). The statute also provides the standard for determining whether an agreement conveys land. If the property management agreement of 1948 were an instrument of conveyance the tenor of which manifestly indicated an intention to create a joint tenancy, then, per RLH § 12781 (1945), the Wailupe property was held in joint tenancy after the Ikutas' divorce.[3] We hold that the 1948 agreement neither conveyed property nor altered the tenancy by entirety.

A property settlement agreement settles and determines the property rights between husband and wife, *Bost v. Bost*, 234 N.C. 554, 67 S.E.2d 745 (1951), and could manifestly indicate an intention to create a new tenancy (as per RLH § 12781 (1945)). On the other hand, a property management agreement only conveys a right of management, and a right of management does not convey any property rights, *cf. In re Monaghan's Estate*, 65 Ariz. 9, 173 P.2d 107 (1946) (community property context), nor does it alter title to the property.

Because both parties agreed that the contract between Shunji and Chiyoko Ikuta dated 1948 was a property management contract and because the substance of the contract did not purport to settle property rights as between the parties, it must be found that the contract did not change title to the Wailupe property. Hence, until the parties were divorced, title remained as tenants by the entirety.

We agree with the probate court's finding that the Wailupe property was held as tenants by the entirety until the divorce and, after the divorce, title was held as tenants in common. The effect of our finding is to leave one-half interest in the Wailupe property in the testamentary trust established by Shunji Ikuta.

---

[3] If found to be a transfer of real property within the State of Hawaii, the property management agreement should have been recorded pursuant to RLH § 12760 (1945) (current version at HRS § 502-91 (1976)). However, we recognize that failure to record would only affect the rights and interests of third parties. The agreement would continue to bind both Shunji and Chiyoko Ikuta.

Since the Wailupe property is not land court property, we do not find it necessary to determine the impact of RLH § 12649 (1945) (current version at HRS § 501-101 (1976)) on an unrecorded property management agreement at this time. *See* City & County v. Clarke, 60 Haw. 40, 587 P.2d 294 (1978).

## II.

Appellants contend that the probate court erred in reforming Dr. Ikuta's last will and testament because 1) extrinsic evidence should not have been admitted and 2) reformation of Dr. Ikuta's will is against public policy. We do not agree with these contentions. ·

Clause IV(h) of Dr. Ikuta's will reads:

This trust shall terminate and the estate distributed, upon the death of the last survivor of Masa Muraoka or Mary I. Ikuta, or when the oldst [*sic*] of my sons attains the age of 30 years, whichever event occurs first.

In the Order Approving Accounts, Determining Trust, Distributing the Estate and Discharging the Ancillary Executor, dated December 11, 1975, the probate judge held that the use of the word "oldst" was a mistake and should be substituted with the word "youngest."

In *Hokama v. Relinc Corp.*, 57 Haw. 470, 476, 559 P.2d 279, 283 (1977), we allowed extrinsic evidence "*i.e.*, all evidence outside of the writing including parol evidence, to be considered by the court to determine the true intent of the parties if there is any doubt or controversy as to the meaning of the language embodying their bargain." We also eliminated the common-law distinction between "patent" and "latent" ambiguities and now permit "parol evidence of the surrounding circumstances in the making of a contract to aid the trial court in its determination of the intention of the parties." *Id.* at 476. In *Graham v. Washington University*, 58 Haw. 370, 569 P.2d 896 (1977), wherein a trust provision was interpreted, we applied the rule stated in *Hokama* and held that the trial court should have admitted extrinsic evidence in order to ascertain the settlor's intent.

In the present case it is clear that there was a controversy before the probate court and the *Hokama* rule should apply. If Clause IV(h) were permitted to stand then it would defeat Dr. Ikuta's testamentary trust from its very inception. At the time the will was written, Dr. Ikuta's oldest son was already 30 years of age. Evidence of the doctor's intent was properly admitted.

Appellants' argument on grounds of public policy is not valid in the present case. The purpose of the policy against reformation of a will is to prevent distortion of the testator's intent. Dr. Ikuta's will was reformed to reflect the testator's true intent.

The public policy which does apply is that "the law abhors intestacy and presumes against it." *Estate of Weill,* 48 Haw. 553, 406 P.2d 718 (1965). If Dr. Ikuta's will were not reformed then his estate would have to be distributed in accordance with the intestacy laws of Hawaii. Hence, reformation was appropriate here.

### III.

Since Mary T. Ikuta elected to take her dower interest, appellants allege that her election accelerates the termination date of Dr. Ikuta's trust. Clause IV(h) of his will provides that the trust terminates upon either the death of the last survivor of Masa Muraoka (deceased) or Mary T. Ikuta or when the youngest son attains the age of 30 years, whichever occurs first. Appellants claim that the former event has occurred since Mary T. Ikuta's renunciation of the will constitutes her "death" for purposes of the trust.

Appellants rely primarily on the doctrine of acceleration. The doctrine of acceleration, as applied to the laws of property, "refers to a hastening of the owner of the future interest toward a status of present possession or enjoyment by reason of the failure of the preceding estate." 2 L. Simes & A. Smith, The Law of Future Interests § 791 at 263 (2d ed. 1956) (footnote omitted). "When a court accelerates the remainder interest upon the failure of the preceding interest, it causes the remainder to take effect at a date earlier than the wording of the conveyance would normally permit." G. Bogert, Trusts and Trustees § 172, at 230 (2d ed. rev. 1979). We recognize that the doctrine may apply in Hawaii, *Estate of Castle,* 25 Haw. 108 (1919); *Lidgate v. Danford,* 23 Haw. 317 (1916), but we do not find it applicable in this particular situation. There are two factors which preclude acceleration; the first is that the unfulfilled condition precedent of Mary T. Ikuta's death has created a contingent remainder interest, and the second is that acceleration would defeat Dr. Ikuta's general plan for the distribution of his property.

"When an attempted prior interest fails because it is renounced by the person to whom it is limited, a succeeding interest is not accelerated so long as a condition precedent to such succeeding interest continues unfulfilled." II Restatement of Property § 233, at 978-79 (1936). The rationale is that acceleration of such an interest would frustrate the plan of disposition to a greater extent than is

necessary. While some courts have applied the doctrine of acceleration even though the remainder interest is contingent, we find that such application would defeat the purpose of the testator and prevent a potential beneficiary from possible participation in the distribution of the principal. *See Ohio National Bank v. Adair,* 54 Ohio St.2d 26, 374 N.E.2d 415 (1978); *Aberg v. First National Bank,* 450 S.W.2d 403 (Tex. Civ. App. 1970); V A. Scott, The Law of Trusts § 412.1, at 3246 (3d ed. 1967).

The longstanding rule in this jurisdiction is that the intent of the testator must prevail "so long as it is not contrary to some positive rule of law and hence no legal fiction nor a non-Hawaiian, technical or a strained construction shall be permitted to nullify it." *O'Brien v. Walker,* 35 Haw. 104, 132 (1939). The importance of a testator's intention was emphasized in *Valentin v. Brunette,* 26 Haw. 417, 423 (1922), where we stated that when a widow declines to accept under her husband's will and elects to take dower, her election should not be permitted to disturb the testator's directions any further than absolutely essential.

In the case at hand, Dr. Ikuta's intentions are discernable from the provisions of his testamentary trust, which provides in pertinent part as follows:

> IV(e)  If any beneficiary dies or predeceases me, his share shall go to his heir or heirs. For the purposes of this will, his wife, or his adopted or illegitimate child or children shall not be considered to be the heir or heirs of the deceased beneficiary. If there be no heir or heirs as herein defined, then the deceased beneficiary's portion shall be divided equally among the surviving beneficiaries or their heirs.

The contingency is the death of a beneficiary, and the persons entitled to the contingent remainder interest are the surviving heirs. For instance, acceleration would cut off the interests of Dr. Ikuta's grandchildren whose father dies before the death of Mary T. Ikuta or the youngest son's attainment of the age of 30 years. We refrain from discussing the validity of Clause IV(e) and use it only to demonstrate that the testator did not intend his trust to accelerate upon Mary T. Ikuta's election of her dower interests.[4] We find that

---

[4] Also it should be noted that as an attorney Dr. Ikuta knew of the possibility of a dower election, yet he failed to provide for it.

the lower court's refusal to accelerate the termination date of Dr. Ikuta's trust conforms with the intent of the trust and was not reversible error.

## IV.

Clause VI of Dr. Ikuta's will states:

If any beneficiary under this will in any manner, directly or indirectly, contests or attacks this will, or any of its provisions, any share or interest in my estate given to that contesting beneficiary under this will is revoked and shall be disposed of in the same manner provided herein as if that contesting beneficiary had predeceased me without heirs.

Cross-appellants Mary T. Ikuta and Paul Ikuta allege that cross-appellees Clyde, Michael and Robert Ikuta have violated Clause VI by requesting the court to exclude the Wailupe property from the trust res, by taking a position inconsistent with Bishop Trust's Motion for Instructions, and by objecting to the Petition for Final Accounts. Cross-appellees alternatively argue that forfeiture clauses, including Clause VI, are void as against public policy or, if valid, then their actions did not constitute a "contest" which would activate such a clause.

We find here that cross-appellees' actions were in the nature of construing the will. As such, we follow the general rule and hold that will construction is not a "contest" to which the clause would apply.[5] *Wells v. Menn,* 158 Fla. 228, 28 So.2d 881 (1946); *Hicks v. Rushin,* 228 Ga. 320, 185 S.E.2d 390 (1971).

## V.

Cross-appellants protest the appointment of Bishop Trust as co-trustee to serve along with Mary T. Ikuta. We deny their request to cancel this appointment.

---

[5] *Accord,* HRS § 560:3-905 (1976), which provides as follows:

Penalty clause for contest. A provision in a will purporting to penalize any interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable if probable cause exists for instituting proceedings.

The Uniform Probate Code was adopted after the present action was instituted and does not have a retroactive effect.

The ability of courts to appoint additional trustees under certain circumstances is a common element of trust law recognized by leading authorities on the subject. G. Bogert Trusts and Trustees § 532, at 137-38 (2d ed. rev. 1978); II A. Scott, The Law of Trusts § 108.2, at 860 (3d ed. 1967); Restatement (Second) of Trusts § 108 (1959). In accordance with these authorities, we find that the lower court was empowered to "appoint additional trustees, and not merely fill vacancies by appointment, when the circumstances are such that the appointment of such additional trustees would be conducive to the better administration of the trust." *Id.* Comment *e* at 239.

The record in the present situation contains sufficient evidence to establish that appointment of Bishop Trust as co-trustee would be conducive to the better administration of the Ikuta trust. In light of the conflict between Dr. Ikuta's first and second families, the fact that Mary T. Ikuta remains a resident of California, and because the trust res includes Hawaii realty, we find that the appointment of a Hawaii corporate fiduciary was proper. *See Haberland v. Haberland,* 303 F.2d 345 (3d Cir. 1962).

Affirmed.

*John A. Chanin* for appellants, cross-appellees Chiyoko Ikuta, Clyde Ikuta, Robert Ikuta and Michael Ikuta.

*Clesson Y. Chikasuye* for appellees, cross-appellants Mary T. Ikuta and Paul Ikuta.

### DISSENTING OPINION OF FONG, CIRCUIT JUDGE

I dissent.

I must respectfully disagree with the majority of this court with respect to the rationale and results it reached on the forfeiture issue. I believe that this court improperly handled the forfeiture issue when it summarily held that: (1) the actions of the Appellants, Clyde, Michael, and Robert Ikuta were in the nature of construing the will; and (2) the lower court was empowered to appoint an additional trustee as the circumstances were such that the appointment of such additional trustee was conducive to the better administration of the trust. Although there are cases which hold that: (1) a search for the true meaning of a will is not an attack upon it; and (2) the probate

court is empowered to appoint additional trustees when the circumstances are such that the appointment of such additional trustees would be conducive to the better administration of the trust, this was not the case at bar.

The Appellants' actions constituted a "contest" of the will. The word "contest" is a term of art and means any legal proceeding which is designed to result in the thwarting of the testator's wishes expressed in his will. This can be found by interpreting a "no-contest" clause in light of the facts and circumstances of each case and the purpose that the testator sought to attain. *Estate of Friedman,* 100 Cal. App.3d 810, 161 Cal. Rptr. 311 (1979); *Estate of Kazian v. Security Pacific National Bank,* 59 Cal. App.3d 797, 130 Cal. Rptr. 908 (1976). *See generally* 80 Am. Jur.2d, *Wills* § 1572; 49 A.L.R.2d 223, § 11.

The "no-contest" clause (often termed an "in terrorem" clause) in Dr. Shunji K. Ikuta's will is brief, but is of great scope. It provides:

If *any beneficiary* under this will *in any manner directly or indirectly, contests or attacks* this will, *or* any of its provisions, any share *or* interest in my estate given to that contesting beneficiary under this will is revoked and shall be disposed of in the same manner provided herein as if that contesting beneficiary had predeceased me without heirs. (Emphasis added)

From the plain language used, it is clear that the clause is directed to any beneficiary under the will and that the prohibition is not only limited to "contest", but also to "attack"; hence the scope is broader. In addition, not only are "direct" contests or attacks prohibited, but also "indirect" ones. The use of the disjunctive "or" and the phrase "in any manner" clearly reflects the testator's proscriptions against all methods of "contest or attack".

The general rule sustaining the validity of no- contest provisions in wills for forfeiture of the share of a beneficiary who initiates legal proceedings for the purpose of thwarting the testator's wishes expressed in his will has been upheld by numerous American courts and is beyond dispute. *In re Markham's Estate,* 46 Cal. App.2d 307, 115 P.2d 866 (1941); *Rudd v. Searles,* 262 Mass. 490, 160 N.E. 882 (1928); *Schiffer v. Brenton,* 247 Mich. 512, 226 N.W. 253 (1929); *Bradford v. Bradford,* 19 Ohio St. 546 (1869); *In re Friend's Estate,* 209 Pa. 442, 58 A. 853 (1904); *Boettcher v. Busse,* 45 Wash.2d 579, 277 P.2d 368 (1954). *See generally* 80 Am. Jur.2d, *Wills* § 1570; 157 A.L.R. 596. However, the extent to which the courts go in applying such

no-contest clauses resulting in forfeiture is in a present state of judicial split. *See Comments, No-Contest Will Clauses,* 24 U. CHI. L. REV. 762 (1957).

An examination of the decisions of the appellate courts of other jurisdictions reveals that the majority of them hold that the no-contest clause is valid and enforceable, subject to the exception that it will not be held effective as to the interest of a beneficiary who litigates the validity of the testator's will if it appears that the contest was instituted by such beneficiary in *good faith* and with *probable cause* to believe that the will was invalid. *Hartz' Estate v. Cade,* 247 Minn. 362, 77 N.W.2d 169 (1956). *See generally* 125 A.L.R. 1135. The policy considerations most often advanced in support of the majority view is that, if a will is actually invalid, a strict and literal interpretation of such a no-contest clause might prevent the establishment of its invalidity and thus thwart the course of justice. The Supreme Court of Iowa best summarized these policy considerations in *In re Cocklin's Estate,* 236 Iowa 98, 112, 17 N.W.2d 129, 135 (1945), where it stated:

[I]f a will were executed as the result of fraud, would not a legatee, who knew of the fraud but stood silently by fearing to risk loss of his legacy and accepted the fruits of the fraud, be morally a party to it? Also, a will executed by an incompetent is legally no more his will than if it were forged and a will secured by undue influence is as repugnant to the law as one secured by fraud. Public policy forbids that one should be tempted to let such wills prevail. The administration of justice should not be frustrated in such a manner.

The Restatement of Property follows a modified version of the majority view. That version takes on a wholly substantive analytic view regarding the no-contest provision. RESTATEMENT OF PROPERTY § 428 (1944) provides:

RESTRAINTS ON WILL CONTESTS

(1) An otherwise effective condition precedent, special limitation, condition subsequent or executory limitation which is designed to prevent the acquisition or retention of a devised interest in and or in things other than land in the event of a contest of the will in which such devise is made is valid, except as stated in Subsection (2).

(2) A provision such as is described in Subsection (1) is invalid to the extent that it applies to a contest of the will based

upon a claim of forgery or upon a claim of subsequent revocation by a later will or codicil, provided there was *probable cause* for the making of such contest. (Emphasis added)

The reasoning underlying the position taken by the Restatement of Property is set forth in Comment a. RESTATEMENT OF PROPERTY § 428, Comment a (1944) provides:

*Rationale.* A will is normally contested on some one or more of six grounds, namely, lack of testamentary capacity, fraud, undue influence, improper execution, forgery, or subsequent revocation by a later will or codicil. In order to avoid the danger to his attempted dispositions presented by a possible will contest, the testator may endeavor to restrain his devisees from undertaking such a challenge. A restraint against contest also serves purposes other than preserving the particular dispositions of the testator against attempted overthrow by a disappointed heir, seeking to gain an unintended enrichment at the expense of the other beneficiaries. It tends to lessen the wastage of the estate in litigation. It lessens the chance of increasing family animosities by besmirching the reputation of the testator when he is no longer alive to defend himself. It discourages the contesting of wills as a means of coercing the other beneficiaries into the making of a settlement. Suits brought for this purpose are most easily premised upon issues which involve uncertain states of fact, a situation normally existing in claims of fraud, undue influence and lack of testamentary capacity. By discouraging these types of contests, the maintenance of such coercive operations is discouraged. Hence the balance of social policy is normally in favor of the validity of the restraint. The person affected by the restraint always retains the right to litigate, and if in such litigation it is established that the proffered document was not the will of the deceased, the clause and the will both fall. If he litigates unsuccessfully and then seeks to claim under the very will that he opposed, it is not unfair that he should suffer the penalty imposed by the testator for such conduct.

When, however, the contest is based upon the claim of a revocation by later will or codicil, there is a public interest in having all the documents believed to represent a decedent's disposition of his property presented to the court. One knowing of such an instrument has the moral, if not the legal duty, of

presenting the instrument for consideration. It would be in contravention of social policy to place a deterrent upon such action, implicit in a risk of loss of a devise made to the person having the knowledge. Provided such person proceeds with *"probable cause"* . . . he should not be deprived of his devise by the contest clause. Similarly there is a public interest in the discovery of the commission of the crime of forgery. A claim of forgery or of subsequent revocation by a later will or codicil is usually based upon evidence far more definite in character than the shadowy lines of demarcation involved in mental capacity, undue influence or fraud. There is thus less likelihood that such a claim will be employed as a means of coercing a settlement. Nor do such contests normally involve the reputation of the testator. For these reasons, which are not applicable to any of the other common bases for the contest of a will, the balance of social policy is against full validity and the exceptions stated in Subsection (2) result. (Emphasis added)

The minority view on the other hand is that the no-contest clause is valid and enforceable, and that the interest is forfeited by any beneficiary who litigates the validity of the will. *Hartz' Estate v. Cade, supra. See generally* 125 A.L.R. 1135. The policy considerations most often advanced in support of the minority view which gives full force and effect to no-contest provisions without regard to any good faith and probable cause which may be possessed by the beneficiary who instituted the litigation, are that: the public is not interested in whether the testator's heir or his legatee receives the property; such provision prevents needless litigation and suppresses undesirable family dissensions and difficulties, and the paramount purpose is to carry out the intentions of the testator. *In re Hite's Estate,* 155 Cal. 436, 101 P.443 (1909). *See generally* 67 A.L.R. 57.

I must acknowledge that this is a clear case of first impression in Hawaii.[1] However, this fact is of no consequence because Appel-

---

[1] Subsequent to the initiation of these proceedings, Hawaii adopted the Uniform Probate Code which, like the Restatement of Property, follows a modified version of the majority view. HRS § 560:3-905 (1976) provides:

*Penalty clause for contest.* A provision in a will purporting to penalize any interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable if *probable cause* exists for instituting proceedings. (Emphasis added)

lants' actions clearly should have resulted in a forfeiture of their interests in Dr. Ikuta's will irrespective of whether this court applied the majority or minority rule. Under both the majority or minority rules, Appellants' actions of initiating legal proceedings with respect to Dr. Ikuta's will were clearly against the expressed wishes of the testator. Thus, under the minority rule, irrespective of the Appellants' justifications, their actions should have clearly resulted in the forfeiture of their interests. In fact, the same result is reached under the majority rule as the Appellants are totally unable to demonstrate that their actions were founded on good faith and probable cause. In fact, Appellants' actions are totally outside of the exceptions for good faith and probable cause as recognized by those jurisdictions following the majority rule. Those exceptions include the commencement of an action for the construction of the will, determination of the mental capacity of the testator, undue influence on the testator, determination as to the existence of fraud, and determination as to whether the will had been altered. *See* RESTATEMENT OF PROPERTY § 428, Comment a (1944); *see Comments, No-Contest Will Clauses, supra;* 80 Am. Jur.2d, *Wills,* § 1572. It is unclear from a review of the opinion of the majority of this court as to whether they were applying the majority or minority rule. Now, for the sake of argument, I will proceed to review the facts and circumstances of this case under the law most favorable to the Appellants, that law being that of the majority view. This review shall serve to illuminate the fact that the Appellants' actions clearly have resulted in a forfeiture of their interests in Dr. Ikuta's will.

I.

The facts and circumstances in this case reveal that the Appellants, in pressing the claim of Chiyoko L. Ikuta to the Wailupe property in the probate proceedings, as well as in Civil No. 36635, asserting full title to the Wailupe property in their mother by their collateral suit in Civil No. 36635 and in the probate court were devoid of good faith and probable cause. The most compelling evidence of the Appellants' bad faith and lack of probable cause on their part can be found in their active participation in Civil No. 36635 and their active hostile position in the probate proceedings below and in presently urging that all of the Wailupe property pass

to their mother, Chiyoko L. Ikuta, by virtue of a purported joint tenancy. If their contentions be successful, it would result in a complete termination of their beneficial interest under the trust in the Wailupe property. Each would lose a 1/8 beneficial interest in said property since the property would go in total to Chiyoko L. Ikuta rather than passing through the will into the trust created for all four sons of the testator. It cannot also be presently argued that the sons were looking out for their mother in this instance by instituting a separate suit and pressing their mother's claim in the probate proceedings. In the face of the no-contest provision, Clyde, Michael and Robert Ikuta must have known that they were in jeopardy of the no-contest provision of the will. Had they been serious in their benevolence to their mother, in insuring that their 3/8 interest in Wailupe be added to her 1/2 interest, they could have transferred their interest, whatever it be, to her, giving her a total of 7/8.

Moreover, their participation in Civil No. 36635 in pressing the claim of Chiyoko were unnecessary since she was already a party sui juris, able to adequately press her own claim without her three sons' intervention. In addition, the petition of Bishop Trust for instructions regarding the property would have been enough for a ruling of the court without any active participation by Appellants. The only logical conclusion to be reached from the attacks of Clyde, Michael and Robert Ikuta is that such self-defeating actions were based on animosity toward Mary T. and Paul Ikuta and aimed at defeating the wishes of the testator, their father, Dr. Shunji Ikuta. From the foregoing analysis, it cannot be urged that their actions were in the nature of construing the will as urged in the majority opinion.[2]

## II.

The facts and circumstances of this case reveal that the opposition of Clyde, Michael, and Robert Ikuta to the appointment of Mary T. Ikuta as trustee to the testamentary trust created under the will of Dr. Shunji K. Ikuta was initiated in bad faith and without probable cause in direct contravention of the no-contest provision of the will.

---

[2] Even if so construed, the clear broad proscriptions in this instance require a contrary result than that reached by the probate court.

The Appellants' position in opposition to the appointment of Mary T. Ikuta as trustee clearly lacked probable cause. There is nothing in the record to indicate that Mary T. Ikuta could not adequately and fairly perform her duties. In fact, Bishop Trust Company, Limited, which was subsequently appointed as co-trustee of the trust, in its Memorandum of Facts, filed on October 10, 1975 stated:

> The will of the decedent in this matter specifically provides for the appointment of Mary T. Ikuta as trustee of the trust to be created for the properties located in Hawaii. Unless there is a compelling cause against not carrying out such intent, this Court is bound to name Mary T. Ikuta as trustee. *Any opposition to such appointment is not a proper issue in a probate proceeding.* Estate of Campbell, 33 Haw. 799 (1936). (Emphasis added)

Further, if the Appellants were concerned with Mary T. Ikuta as a trustee, they would be entitled to an accounting and they could bring an action at a later date to remove her.

It should be remembered that the record below clearly indicated that Dr. Ikuta was fully cognizant of the provision and consequences of naming Mary as the sole trustee of the Hawaii properties. During the deposition testimony at the probate court below of Robert M. Takasugi, the attorney who drafted the provision, the following was indicated:

1. That the doctor was deeply concerned for his youngest son Paul and created the trust to protect him against his other sons "ganging up" on him.

2. That Dr. Ikuta[3] had himself drafted a prior ancillary will in crude language in which he had appointed National Mortgage and Finance Company of Honolulu as trustee.

3. That in requesting Mr. Takasugi to change his will, the testator specifically instructed that National Mortgage and Finance Company be deleted and Mary T. Ikuta be named sole trustee because "he had full faith and trust that she would take care of Paul."

In the construction of a will this court has repeatedly indicated

---

[3] It must be remembered that the testator was not only a doctor of medicine but also had a law degree.

that the testator's intent is of paramount consideration. *Estate of Weill,* 48 Haw. 553, 406 P.2d 718 (1965); *Hawaiian Trust Co. v. Faria,* 43 Haw. 391 (1959); *Peters v. Vannatta,* 41 Haw. 252 (1955). In light of the clear intent of the testator, Dr. Ikuta, to have Mary T. Ikuta solely appointed as trustee, the actions of the Appellants to have Bishop Trust appointed as co-trustee were clearly in bad faith. This is because given the facts and circumstances of this case, it can only be reasonably concluded that the Appellants' actions were based on their animosity toward Paul and Mary T. Ikuta. Their actions were precisely the type of legal proceedings that the testator wanted to avoid through the no-contest provision, and as such, the Appellants' interests should be forfeited.

Moreover, even if this court does not agree with the forfeiture arguments hereinabove indicated, the probate court's decision regarding the appointment of a co-trustee was in error and should be reversed.

The probate court clearly erred in appointing Bishop Trust as co-trustee of the trust created by the decedent's will. While it is recognized that courts may appoint additional trustees under certain circumstances, and not merely to fill vacancies by appointment, the record herein does not justify the probate court's conduct. It must be remembered that Bishop Trust did not seek the appointment. In fact, it urged the contrary, namely, that Mary T. Ikuta be the sole trustee. Mary T. Ikuta herself also protested the appointment. The appointment was made by the probate court without any of the requisite findings to support or justify the additional appointment. The record is devoid of any findings that the sole trustee, Mary T. Ikuta, was unable to perform her functions, or that the work was too great for her to handle.

It is a general proposition of law that a probate court will not appoint an additional trustee where such additional services are not required, particularly when such additional appointment is in conflict with the intent of the testator. 59 A.L.R.3d 1129; 151 A.L.R. 1308. This proposition has been summarized by the authors of an A.L.R. article which states that:

> Speaking generally, it may be said that where a certain number of trustees are appointed by a testator to administer a trust created by him, but less than all of them qualify and perform the duties of the trust, the court has power to appoint a

cotrustee or cotrustees to act with those who have qualified, where, in the judgment of the court, the filling of the vacancy will be beneficial to the trust, and it does not appear that *such appointment would be in conflict with the intent of the testator* or with the statutes. *Otherwise, the court will not make such an appointment.* (Emphasis added) *Id.* at 1309.

The court's power to appoint additional trustees under its discretionary power is limited to situations where the additional trustee's services are appropriately required as in the common case of where a trustee had failed to be qualified, or had resigned, or died. Such was not the case herein. In the light of the clearly expressed intent of the testator to have Mary T. Ikuta act as sole trustee, there were no facts in this instance requiring any change or enlargement of the number of trustees from said intent. As such, the probate court's action was improper and should be set aside.

I would reverse.